Edmond *v.* Caldwell.

it cannot exercise any power thus granted in violation of the provisions of the statute.

*Judgment for plaintiff.*

NOTE.

## JOHN EDMOND *vs.* ISAIAH C. CALDWELL.

When payment is not made at the time, a sale by a factor creates a contract between his principal and the purchaser; and after notice of the interest of the principal, the purchaser is bound to pay him.

And if the factor take a note of the purchaser for the amount of the goods payable to himself only and not to order, and hand it over to the principal yet the action may be maintained by the principal for the goods sold in his own name.

The disclosure of a trustee is not admissible evidence for him in another action in favor of one not a party to the trustee process.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

Assumpsit for a gig and harness, with the money counts. The plaintiff called one *William Smith,* as a witness, and he testified, that the gig and harness were the property of the plaintiff who entrusted them with him to sell, and that in *July,* 1836, he sold the gig to the defendant, informing him, that it was *Edmond's* property; that *Caldwell* gave a note payable to *Smith,* not negotiable, *Smith* informing him at the time, that it would immediately be transferred to *Edmond,* *Caldwell* refusing to purchase the gig, and give a note running to the plaintiff; that *Smith* sold the gig to the defendant and gave him a bill of sale, according to his impression, in the name of *Edmond,* and took the note in the name of the witness,

Edmond v. Caldwell.

and delivered it to *Edmond*, who accepted it, making no objection thereto. The note was retained by *Edmond* until *August* 5, following, when *Smith* sold the harness, also the property of *Edmond*, to *Caldwell*, gave up the first note to *Caldwell*, and took a new note for the gig and harness running to him, *Smith*, not negotiable, which was handed over to *Edmond* by *Smith*. The bill of sale was produced by the defendant, and showed that *Smith* made the bill of sale in his own name; and the plaintiff offered in evidence the note made to *Smith* for the gig and harness. The defendant contended, that he was not liable to the plaintiff on this evidence in general assumpsit; that if the sale was good, he was only liable on his express contract, or note; and that the law would not imply a contract contrary to the express contract and express declarations of the defendant; that if the sale was not good the action should be in tort; and requested the Court to direct a nonsuit. This the Court declined doing. The defendant also contended, that *Smith* was not a competent witness to impeach his bill of sale. This objection was overruled. The defendant also offered to prove that he had been summoned as the trustee of *Smith*, had disclosed the facts, had been adjudged the trustee of *Smith*, on account of the note; that execution had issued, and that the defendant had paid the amount of the note as the trustee of *Smith*. The Judge ruled, that this evidence was inadmissible. The verdict was for the plaintiff, for the value of the gig and harness, and the defendant filed exceptions.

The case was argued in writing.

*J. C. Woodman*, for the defendant, insisted on the following propositions.

1. The law will not imply a contract under such circumstances from the defendant to pay the plaintiff immediately as much as the gig and harness were worth. There was an express contract on the part of the defendant to pay *Smith* in six months, and if that is valid, the law will not imply a different contract. *Jewett* v. *Somerset*, 1 *Greenl.* 125; *Whiting* v. *Sullivan*, 7 *Mass. R.* 107.

2. The contract made by *Smith* and *Caldwell* was valid, and binding by reason of authority in *Smith*, or by subsequent ratification. *Dwight* v *Whitney*, 15 *Pick.* 184; *Wise* v. *Hilton*, 4 *Greenl.* 437.

3. Although the sale of goods by an agent creates a contract between the owner and the purchaser, it is competent for a commission merchant to receive payment by cash, or note running to himself. *Dwight* v. *Whitney*, before cited; *West Boylston M. C.* v. *Searle*, 15 *Pick.* 230.

4. If the sale was not valid, because *Smith* had no prior authority, and because his acts were not subsequently ratified, then there was no sale, and this action cannot be maintained.

5. The evidence offered in relation to the trustee process was legally admissible. *Wentworth* v. *Weymouth*, 2 *Fairf.* 446; *Hull* v. *Blake*, 13 *Mass. R.* 153.

6. *Smith's* testimony was improperly admitted, because he could not impeach his own bill of sale.

*Codman & Fox* argued for the plaintiffs.

1. As it respects the rights of factors, principals, and vendees, the general rule is, that a factor's sale creates a contract between the owner and buyer, and when a factor has sold upon credit, and the principal gives notice to the purchaser of his claim and interest before payment, and requires payment to be made to himself, the buyer will not be justified in afterwards paying the factor. *Kelly* v. *Munson*, 7 *Mass. R.* 324; *Thompson* v. *Perkins*, 3 *Mason*, 238; 2 *Kent's Com.* 631; 7 *T. R.* 360; 3 *B. & P.* 490; 5 *Serg. & R.* 19.

2. The rights of the plaintiff were not varied by the giving of a *non-negotiable* security to *Smith*, the plaintiff's agent. *Greenwood* v. *Curtis*, 6 *Mass. R.* 371; *Maneely* v. *McGee*, *ib.* 145; *Johnson* v. *Johnson*, 11 *Mass. R.* 361; 8 *Johns. R.* 389; *Goodenow* v. *Tyler*, 7 *Mass. R.* 42; *Dutton* v. *Kendrick*, 3 *Fairf.* 384.

They controverted the various positions taken by the counsel for the defendants; and to show, that the proceedings in the trustee process were not admissible, cited *Wise* v. *Hilton*, 4 *Greenl.* 435.

After a continuance for advisement, the opinion of the Court was drawn up by

WESTON C. J. — It appears, that in *July*, 1836, *William Smith*, as the agent and factor of the plaintiff, sold to the defendant a gig, and in a few days afterwards a harness, the property of the plaintiff. When payment is not made at the time, a sale by a factor creates

Edmond *v.* Caldwell.

a contract between his principal and the purchaser. *Titcomb & al.* v. *Seaver,* 4 *Greenl.* 542, and the cases there cited. And in *Kelly* v. *Munson,* 7 *Mass. R.* 319, *Sewall J.* says, " this rule applies, whether the factor has or has not named his principal, at the time of the sale."

It is insisted, that the express promise to pay to the factor, excludes the contract, which the law would otherwise imply, between his principal and the purchaser. But we are not aware, that such would be the effect of an express promise to the factor. Had the latter taken a negotiable note, which had been duly transferred, it would have been tantamount to payment ; and to hold the purchaser still liable to the owner or the factor, might subject him to be twice charged. His promise to the factor, was subject to the control of the owner. If he chose to require payment to himself, he had a right so to do.

It is said, the note received was payable on time, and that the defendant is, for that reason, liable only upon that contract. No such fact however appears in the case ; and it is therefore unnecessary to consider what might have been its effect. It is further contended, that the defendant bought under an express protestation, that he would not be liable to the plaintiff. He declined giving a note running to him, but he did not disclaim any liability, which the law would imply. He knew the gig belonged to the plaintiff, and that the note was to be passed to him, and he must have understood, that to him payment was to be made.

It appears, that the plaintiff, when apprized of what was done, received the note and made no objection. But there is no evidence, that he did at any time consent that *Smith* should receive payment, or that he waived his right to insist upon receiving himself the price, for which his gig and harness sold. If by the appointment of the owner, a note had been given to a third person, to be received for his own use, the liability would be transferred by his consent, and the purchaser would be holden only to the appointee. But in this case the plaintiff had the evidence of the express promise to *Smith,* which the defendant knew was not made for his benefit. Upon payment to the plaintiff, the collateral promise to *Smith* would be discharged ; and the defendant was in no danger of being twice charged. The plaintiff might ratify the sale to the de-

fendant, without being bound to acquiesce in his express promise to pay *Smith.* The law gave him a right to interpose, as the real vendor of the property, which could not be defeated by any collateral promise, he might choose to make to his factor.

It is urged, that the contract, into which the defendant entered, is to be found only in the note ; and that it was not given on account of a prior debt or obligation. The sale of the plaintiff's gig, and the giving of a note running to *Smith,* are parts of one transaction ; but the plaintiff is not precluded from showing, that he sold the property to the defendant through his agent, and the legal result is, that his right to look to the defendant for the price is not taken away, by his mere promise to pay the agent.

In the case of the *West Boylston Man. Co.* v. *Searle & al.* 15 *Pick.* 225, the court held that the legal title in a note given to a factor, for goods sold on account of his principal, is in the factor, and the principal, who has the beneficial interest, is the *cestui que trust,* and if he sues on the note, he must do it in the name of the factor, or if as indorsee, would do so, subject to any fair matter in offset or discharge. But the court say further, " if the principal is in a condition, to declare on the contract for goods sold, treating the note as a nullity, or as a mere collateral security, not amounting to payment, he might probably recover in his own name." And this does appear to us to be the condition of the plaintiff. We are therefore of opinion, that the presiding Judge was right in refusing to order a nonsuit.

The counsel for the defendant, attempts to distinguish the plaintiff's claim for the harness from that of the gig. It does not appear, that he took any such distinction at the trial, or that he did, upon this ground, request any instructions or ruling from the Judge. If the defendant had paid *Smith* for the harness, or had been adjudged his trustee therefor, without being apprized of any interest in the plaintiff, payment thereupon may have been equivalent to payment to *Smith ;* and if the purchaser has paid the factor without notice, he does not remain liable to the principal. But this assumes, that he had no such notice, which is not found, nor is it deducible from the evidence. *Smith* does not testify, that he notified the defendant, the harness was the plaintiff's, but as it was put into the same note, which was given for the gig, which he knew did be-

long to the plaintiff, the jury might have been warranted in finding, that the defendant was apprized that *Smith* sold both in the same character.

The defendant had paid the amount to an attaching creditor of *Smith*, upon being adjudged his trustee. This would discharge him from all claim on the part of *Smith*, but not on the part of the plaintiff, at least unless payment to *Smith*, at the time of the disclosure, ought to have that effect. And he would not have been justified in paying *Smith*, having no reason to believe that he was the holder of the note, and knowing also, that the interest was in the plaintiff. If he disclosed all the facts, and was adjudged trustee, that judgment was erroneous. If he did not disclose all the facts, he omitted to do so at his peril. In either case, it could afford him no defence against the plaintiff, who was not a party to that judgment, the evidence of which was therefore properly rejected.

*Exceptions overruled.*