[Goldthwaite v. National Bank.]

# Goldthwaite *v.* National Bank.

67 | 549
98 | 542

*Bill in Equity to establish Equitable Set-Off against Judgment.*

1. *Set-off; what demands are available at law.*—A cross demand, to be available as a set-off at law, must be such as would support an independent action at law by the defendant, at the commencement of the suit ; hence, a payment of his principal's debt by the surety, after the commencement of suit against him on a debt due to his principal, is not available as a set-off in the action.

. 2. *Same, as against assignee of note.*—As against the assignee or holder of a promissory note, suing the maker, the doctrine of set-off has never been carried further than to put him in the place of the payee, or party having the beneficial interest ; and a set-off in favor of the maker, against an intermediate holder, has been uniformly disallowed, in the absence of an agreement founded on new consideration, between the maker and such intermediate holder.

3. *Equitable set-off, on ground of insolvency.*—In the absence of all intervening equities, courts of equity put the same construction on statutes of set-off as do courts of law. Insolvency is recognized as a ground for the allowance of a set-off in equity, when it would not be allowed at law, but it is only the insolvency of the original creditor against whom the claim is asserted ; and while the assignee of non-negotiable paper takes it subject to all equities to which it was subject in the hands of the assignor, this means only the equities between the original parties, and does not include equities which may arise between other parties in the course of its transfer.

APPEAL from the Chancery Court of Montgomery.

Heard before Hon. H. AUSTILL.

The bill in this case was filed on the 20th December, 1875, by George Goldthwaite, against the First National Bank of Montgomery ; and sought to enjoin, and to establish an equitable set-off against a judgment, which the defendant had recovered against the complainant, in the City Court of Montgomery, on the 11th December, 1875, for the sum of $4,326.27, besides costs. The action at law, in which the judgment was rendered, was commenced on the 3d December, 1874, and was founded on said Goldthwaite's promissory note, or obligation, dated Montgomery, February 16th, 1871, and in the following words : " Due Barnett, Micou & Co., a copartnership composed of Thos. M. Barnett, Nicholas D. Barnett, and Benj. H. Micou, twelve thousand, five hundred and fifty-seven 33-100 dollars ($12,557.33), with interest from 1st January, 1871. This obligation is for a settlement had this day, for money advanced in June, 1869, to pay for $15,000 of the capital stock of the Tallassee Manufacturing Company Number One, and now held in my name. To secure the payment of above amount, I hereby authorize said Barnett, Micou & Co. to apply any dividends which may accrue on said stock, to

the payment of this obligation ; also, to pledge said stock to the payment of above obligation." Indorsed on this obligation were several credits for partial payments, amounting to $6,000, dated May 27, and July 2, 1873, and a release of fifty shares of the stock " in consideration of certain credits as dividends received on the within obligation, and certain other credits entered on back of said note, said release to date from 1st July, 1873 ; " which release was signed by said Barnett, Micou & Co.

The bill sought to establish, as an equitable set-off against this judgment, certain payments made by the complainant, as accommodation indorser for the Tallassee Manufacturing Company, on several bills of exchange. The bills were seven in number ; were drawn by the said corporation, on Barnett, Micou & Co., by whom they were accepted ; were drawn and indorsed on the 27th November, 1873, and matured on different days during the months of January, February, and March, 1874. The payments made by the complainant on these bills, amounting to about $2,500, were made in January, February, and March, 1875. The bill alleged that the complainant, " on or about the 15th June, 1869, subscribed for and purchased one hundred and fifty shares of the capital stock of said Tallassee Manufacturing Company, amounting in the aggregate to $15,000 ; that afterwards, on or about the 16th February, 1871, a settlement was made of his liability for said stock, when, after allowing him credits for the dividends declared on said stock after his purchase, and other credits, in full settlement of the balance due from him for said stock, he executed and delivered his obligation," above set out, a copy of which was made an exhibit to the bill ; " that said obligation was in fact taken on account of said Tallassee Manufacturing Company, and sundry payments thereon were made by complainant to said company, and sundry dividends on said stock were credited thereon ; that said obligation, shortly after its execution, was transferred to said company, and was held and owned by said company until, as complainant has since learned, the 5th November, 1873 ; " that he indorsed the bills of exchange, on the 27th November, 1873, " for the accommodation of said company, and without any other consideration ; that said company was insolvent on said 27th November, 1875, when complainant so indorsed said bills for its accommodation, and has so continued ever since ; that at the time complainant so indorsed said bills, as aforesaid, no notice had been given to him, or to any person authorized to receive such notice, that his said obligation had been transferred by said company, but he then believed that said company still held said obligation, and if any transfer

thereof had then been made by said company, complainant was not then informed, and was wholly ignorant of the same;" and that the defendant, in its action at law on his obligation, refused to allow him any credit or set-off on account of the payments which he had been compelled to make on account of his liability as accommodation indorser of said bills of exchange.

The defendant answered the bill, admitting that the complainant subscribed for and purchased the stock from said corporation as alleged, but alleging that he executed his notes for the purchase-money payable, not to the company, but to Barnett, Micou & Co., and, on subsequent settlement with said firm, executed his obligation payable to them, as shown by the exhibit to the bill; that this obligation was given for his indebtedness to said partnership, and any payments or credits made or allowed thereon were made to said partnership and credited by it, and not to or by said company; denied that the company held or owned said obligation prior to November 5th, 1873, when it was transferred to the defendant, for valuable consideration, by Benj. H. Micou; and alleged that the defendant, at the time of said transfer, "had no notice of any defenses or equities then existing between the parties to said obligation, or any defects in said obligation, and none then existed, so far as this defendant knows, has been informed, or believes."

The Chancellor overruled a demurrer to the bill for want of equity, but dismissed the bill on final hearing on pleadings and proof; and his decree is now assigned as error.

TROY & TOMPKINS, for appellant.—The bills of exchange which were indorsed by Goldthwaite for the accommodation of the Tallassee Manufacturing Company, and which were afterwards paid by him, the amount so paid being now asserted as an equitable set-off against the judgment at law, were so indorsed by him on the 27th November, 1873; and he became a creditor of the corporation from that time, and had a right to retain a debt or fund in his hands, as indemnity against his liability, on his principal becoming insolvent. *Railroad Co. v. Rhodes*, 8 Ala. 217; *Ex parte Metcalfe*, 11 Vesey, 404; Chitty on Bills, § 746, note *n*; *Feazle v. Dillard*, 8 Leigh, 30; *Battle v. Hart*, 2 Dev. Eq. 31. Although Goldthwaite's note, on which the judgment was rendered, was assigned to the First National Bank prior to his accommodation indorsement of the bills; yet he had no notice of the assignment until after he had incurred that liability, and his right of set-off was not affected until he had notice of the assignment.—*Wray's Adm'r v. Furniss*, 27 Ala. 471; *Carroll*

*v. Malone,* 28 Ala. 521 ; *Clopton v. Morris,* 6 Leigh, 278.   The right to establish the set-off, then, depends upon the insolvency of the corporation when the liability as accommodation indorser was assumed, and the want of notice of the assignment at that time ; and there is no controversy as to either of these facts. · The effect of these admitted facts can not be avoided, on the ground that the insolvent corporation was only an intermediate holder of the note ; because, in the first place, the evidence clearly shows that the corporation was, in fact, the real owner of the note all the time ; and, in the second place, because the bank received the note as collateral security for pre-existing debts of the corporation.   As to such *choses* in action, the rule is well settled, that the assignee takes them subject to all the equities and rights which the debtor has against the immediate assignor at the time of the assignment, or, rather, at the time notice of the assignment is given.—*Colyer v. Craig & Smith,* 11 B. Monroe, 73.   The note was given to Micou, who was the president of the manufacturing corporation, for the purchase of stock in the corporation ; and it was taken payable to Barnett, Micou & Co., of which firm Micou was an active, managing member. In what business that firm was engaged, does not appear ; but it is shown by the testimony of N. D. Barnett, a partner, that they were not engaged in loaning or advancing money ; and there is no proof that Micou, as president, had any authority to transfer the note, or the claim of the corporation for the purchase-money of the stock, to himself individually, or to the firm of which he was a partner, and no such power can be implied from his position as president of such a corporation ; and there is no proof that the corporation ever ratified his act, or was even informed or notified of it. Under this state of facts, the note must be regarded as the property of the corporation, from the time it was given, and the corporation might have maintained an action on it.—*Andrews & Brothers v. Jones,* 10 Ala. 460.

D. CLOPTON, *contra.*—The general rules of set-off are the same in equity as at law.—Waterman on Set-off, 416, note, 427 ; *McKinley v. Winston,* 19 Ala. 301 ; *French v. Garner,* 7 Porter, 554.   The principle is settled, that the maker of a note can not set off a demand against an intermediate beneficial holder, when the note is in the hands of a subsequent assignee.—*Stocking v. Toulmin,* 3 Stew. & P. 35 ; *Kennedy v. Manship,* 1 Ala. 43 ; *Pitts v. Shortridge,* 7 Ala. 494 ; *Sykes v. Lewis,* 17 Ala. 265 ; *McKenzie v. Hunt & Andrews,* 32 Ala. 496. Under the facts of this case, the Tallassee Manufacturing Company can not be considered in any other light than as

[Goldthwaite v. National Bank.]

an intermediate beneficial holder ; and neither the time when its interest was acquired by transfer from Barnett, Micou & Co., nor Micou's authority to make or to accept the transfer is shown. Goldthwaite's original note was given in June, 1869, for the price of stock purchased from or through Barnett, Micou & Co., to whom it was made payable, and who were charged with the amount on the books of the company. No ownership of this note, or interest in it, was ever vested in the corporation, or asserted by it; and when the note was given in February, 1871, on which the judgment was rendered, it was given on settlement of the accounts between Goldthwaite and Barnett, Micou & Co.; being made payable to that firm, and giving them authority to apply the dividends of stock to its payment, the stock itself being also pledged. This note was never transferred to the company until after July, 1873, and probably not until the transfer to the bank. Insolvency is an admitted ground of equitable set-off ; but the complainant does not bring himself within the rule established by the decisions of this court. The bill alleges that the corporation was insolvent on the 27th November, 1873, when the complainant indorsed the bills for its accommodation ; but this can not be construed as an averment that it was insolvent on the 4th November, 1873, when the note was transferred to the bank ; nor is there any averment that the complainant, in indorsing the bills, relied on his existing indebtedness as protection against the liability thereby incurred. If the company was solvent when the liability as accommodation indorser was assumed, and afterwards became insolvent, before notice of the assignment ; or, if the complainant, in becoming accommodation indorser for its benefit, relied on his indebtedness as indemnity and protection, not then having notice of the transfer of his note ; in either case, he might claim protection against his liability on the note. But neither of these is the case made by the pleadings and proof, and the bill must fail.—*Railroad Co. v. Rhodes,* 8 Ala. 226 ; *Andrews v. McCoy,* 8 Ala. 920 ; *Carroll v. Malone,* 28 Ala. 521 ; *Merrill v. Souther,* 6 Dana, 305.

BRICKELL, C. J.—It is very certain the demands now attempted to be set-off were not available in a court of law, because they were not subsisting at the commencement of the action. A demand, available as a set-off in a court of law, must be such as the defendant could, at the commencement of suit, have made the foundation of a separate, independent action against the plaintiff. A surety, therefore, paying the debt of the principal for which he was bound, after the commencement of suit against him on a debt due the principal,

whatever may be the merits of his demand, has not a set-off available at law.—*Cox v. Cooper*, 3 Ala. 256; *Franklin v. McGuire*, 10 Ala. 557. Nor would the set-off have been available at law, if, at the time the action was commenced, it had been a subsisting demand. Sets-off have never been carried further than to put the assignee in the place of the payee or obligee, or of the party having the real, beneficial interest, though not expressly named as the payee or obligee. Unless there is an agreement, founded on a new consideration, made between the parties, a set-off by the maker of a promissory note, against an intermediate holder, has been uniformly disallowed.—*Stocking v. Toulmin*, 3 St. & Port. 35; *Kennedy v. Manship*, 1 Ala. 43; *Pitts v. Shortridge*, 7 Ala. 494; *Sykes v. Lewis*, 17 Ala. 261; *McKenzie v. Hunt*, 32 Ala. 494; *Bostick v. Scruggs*, 50 Ala. 10.

In the absence of all intervening equities, courts of equity put the same construction on statutes of set-off as do courts of law—they follow the law. The only intervening equity which can be supposed to withdraw the demands of appellant from the operation of the rule at law, is the insolvency of the Tallassee Manufacturing Company at the time of his indorsement of the bills of exchange for the accommodation of the company. Insolvency is recognized as a distinct equitable ground for the allowance of the set-off of demands which at law could not be made available.—*T. C. & D. R. R. Co. v. Rhodes*, 8 Ala. 206; *Donelson v. Posey*, 13 Ala. 752; *Wray v. Furniss*, 27 Ala. 471; *Carroll v. Malone*, 28 Ala. 521. But it is the insolvency of the original creditor against whom the set-off is preferred. No case in this court has, as yet, gone so far as to declare that the insolvency of an intermediate assignee, against whom a set-off is preferred, will justify the interference of a court of equity, and a departure from the fixed construction of the statute in courts of law.

Upon what principle can the court interfere, and vary the construction of the statute? While it is true that the assignee of a paper, not negotiable, takes it subject to all the equities to which it was subject in the hands of the assignor, this is here understood to mean the equities existing between the original parties, and not equities which may arise as to other parties in the course of the transfer of the paper. *Tison v. People's Saving & Loan Association*, 57 Ala. 323. It is these equities only the assignee risks; and if the risk of others were devolved upon him, as is said in *Blair v. Mathiott*, 46 Penn. St. 265, it would put an end to the transmission of such choses in action altogether, a thing which the law has no policy in discouraging.—*Downey v. Thoup*, 63 Penn. St. 322. If equity should intervene, and embarrass

[Goldthwaite v. National Bank.]

the assignee with the settlement of all matters which may be the proper subjects of sets-off as between the maker or obligor and intermediate assignees or holders, it would involve him in litigation, and, it may be, loss, because of dealings between parties of which the paper can give him no notice, nor information of any fact to put him on inquiry. The paper, of itself, furnishes the assignee evidence that the original transaction was between the maker and payee; and there is good reason for subjecting him to all the equities existing between them. The transfer, or assignment, is a transaction between the successive assignors and assignees, to which the maker is not a privy or a party, and cannot excite inquiry whether there have been any transactions between him and either or all of the assignors. It would be a departure from the general principle, that the assignee of a chose in action risks only the equities existing between the original parties, and not equities which may exist against an assignor, and would embarrass their transfer, diminishing their value, if, in a court of equity, there was a departure from the settled construction of the statutes of set-off, subjecting the assignee to loss, because they may have existed against any or all the assignors.

The appellee became the holder of the note on a valuable consideration, whether it was taken as a mere pledge for the payment of pre-existing debts, or upon a new consideration— the giving of further time for the payment of such debts—subject to no other equities than such as, before notice of the assignment, existed between the appellant and the original payees, not subject to such mere equities or rights as set-off, as may have arisen between the appellant and the Tallassee Manufacturing Company. If, before notice of the assignment, the appellant had paid the note to the company, or if, when the bills were indorsed, or at any time before notice of the assignment, there had been, upon a new consideration, an agreement between him and the company, that he should pay the bills in satisfaction of the note, it may be he would have an equity superior to that of the appellee. That is not the case now presented.

Affirmed.

STONE, J., not sitting.