## Brooks *v.* Greil Brothers Company, *et al.*

*Bill to Cancel and Annul Notes and Lease, and for an Accounting.*

(Decided November 7, 1914. Rehearing denied May 13, 1915.
68 South. 874.)

1. *Bills and Notes; Bona Fide Purchaser; Rent Notes.*—Notes given for rent which are payable in cotton are not governed by the law merchant, and an assignee thereof cannot claim the protection of the statute as a bona fide purchaser of commercial paper in due course of business.

2. *Same; Non-Negotiable Choses; Assignee; Equity.*—Rent notes payable in cotton and not in money, are non-negotiable choses in action, and the assignee thereof acquires only the rights of the assignor, subject to all the rights, equities and defenses against such notes in the hands of the assignee.

3. *Same; Assignee; Latent Equities.*—Where non-negotiable instruments are assigned for value to an assignee without notice of a latent equity in a third person, such equity is lost, since the law does not require that such assignee takes its subject to such latent equity of which he had no notice.

4. *Principal and Agent; Undisclosed Principal; Agent's Contract; Action.*—An undisclosed principal may sue upon a contract made by his agent for his benefit.

5. *Same; Defenses.*—Where a principal sues a third party on an agent's contract, such third party, to avail himself of any equities against the agent, is required to show that he did not know and had no means of knowing that the party with whom he contracted was 'a mere agent in the transaction.

6. *Same.*—Where notes payable in cotton were taken in the name of the agent instead of in the name of his principal, an assignee of such notes had the burden of showing that in equity he was entitled to protection as against the claims of the lessor.

7. *Trust; Assignee of Non-Negotiable Instrument; Right of Third Party.*—Under the allegations of the bill in this case, and without allegation that the tenant or respondent was guilty of positive fraud or intended a violation of the trust obligation, a trust in the rents received by the defendant for the benefit of the complainant was sufficiently alleged, and the rents might be followed so long as they could be identified, into the hands of all subsequent purchasers not bona fide purchasers for value without notice.

8. *Bills and Notes; Assignment; Notice.*—The assignee of a non-negotiable instrument is not excused from the exercise of reasonable prudence and inquiry as the circumstances would suggest to a reasonably prudent man.

(Mayfield and Sayre, JJ., dissent.)

APPEAL from Lowndes Chancery Court.

Heard before Hon. L. D. GARDNER.

. Bill by Mary E. Brooks against Greil Brothers Co. and others to cancel certain notes and leases, and for an accounting for rents and profits received. Decree for respondents and complainant appeals. Reversed and remanded.

POWELL & HAMILTON, for appellant.

STEINER, CRUM & WEIL, for appellee.

DE GRAFFENRIED, J.—(1) Greil Bros. Company, a corporation, is shown by this bill to be the assignee of a lease and rent notes described in the lease. These instruments are not governed by the law merchant, as rent notes are not payable in money, but in cotton. Greil Bros. Company cannot claim, therefore, the protection which our statutes afford to bona fide purchasers of commercial paper in the due course of business.

(2) This corporation is, in this matter, the holder of non-negotiable choses in action. It holds them as the assignee of the husband of complainant, and it—unless it possesses an equity which we discuss below—possesses only, by such assignment, the rights of the husband in the notes. The husband, if the allegations of the bill are true, possessed, at the time he transferred the notes to Greil Bros. Company, as against his wife, no right or claim upon the lease or the notes. As between him and her, they were the wife's notes, and, as the notes and lease were non-negotiable, their assignment by the husband to Greil Bros. Company conferred, prima facie, no more rights upon Greil Bros. Company than the husband possessed in them when he made the transfer. Prima facie, Greil Bros. Company, as the assignee of the lease and notes, acquired no rights as against the wife, and prima facie, as between Greil Bros. Company and the wife, the notes and lease belong to the wife. These are hornbook principles.—Mechem on Agency, p. 625, § 7722. In the leading case of *Pitts v. Mower,* 18 Me. 361, 36 Am. Dec. 727, the Supreme Court of Maine said: "When an agent sells the goods of his principal and takes a promissory note payable to himself, the principal may interpose before payment, and forbid it to be made to his agent; and a payment to the agent after this will not be good. And the principal may sue in his own name on the contract of sale, except when, as with us, it is extinguished by taking a negotiable promise. It is said, in argument for the defendants, that the law will not imply a promise where there is an express one, and that, there being an express one in the note to Hiram A. Pitts, one cannot be implied to the plaintiff. The law regards the express contract made with the agent in the purchase as made with the principal and as remaining unextinguished by the note not

negotiable. These rights of the principal are well established, and were recognized in the cases of *Titcomb v. Seaver,* 4 Greenl. (Me.) 542, and *Edmond v. Caldwell,* 15 Me. 340. In this case the defendants were notified, before payment or judgment against them as trustees, that the plaintiff was the owner of the property sold, and that he claimed to have the payment made to himself. If they thought proper to disregard that notice, the rights of the plaintiff cannot thereby be impaired."

In the case of *National Life Ins. Co. v. George D. Allen,* 116 Mass. 398, the Supreme Court of Massachusetts said: "As a general rule, where a written agreement not under seal is made on behalf of a principal not named, and the consideration has moved from him, it is competent for the principal to bring an action in his own name on such agreement thus made for his benefit; and, on the other hand, even when the agent may himself be liable upon a written contract, because he has failed fully to disclose that he has made it on behalf of another, the principal on whose behalf he has made it may also be liable.—*Huntington v. Knox,* 7 Cush. (Mass.) 371, 374, and other cases cited in *Exchange Bank v. Rice,* 107 Mass. 37, 43 [9 Am. Rep. 1].

"The instrument here sued, although not negotiable, is properly designated as a promissory note, it being an absolute promise to pay money at all events; but, from its nature, an action upon it must necessarily be confined to those who are actually parties to it, either really or nominally, and it is clearly not intended to make any contract which was capable of transfer or assignment. On notes similar in their general character to this, it has been held that the action might be maintained in the name of the principal from whom the consideration moved. In *Garland v. Reynolds,* 20 Me. 45,

upon a note not negotiable for $100, payable to Enoch Huntington, treasurer of the committee of surplus revenue, it was held that the town for whose money the note was given might sue in its own name.

"In the present case, the principal is entitled to the benefit of the note, and the defendant can sustain no injury by suit in the name of the principal, as he would have the benefit of any payments made by him to the nominal payee, while acting as agent.

"Nor do we think that the St. 3 & 4 Anne, c. 9, § 1, upon which the modern doctrine of promissory notes is founded, which declares that the money mentioned in such note shall be construed to be due and payable to such person to whom the same is made payable, should be held to prevent the principal from maintaining an action in his own name on a note not negotiable, where the nominal promisee is an agent. Nor, even if it may be sued by a principal in his own name, does it present the case of a note payable to A. or to B., as claimed by the defendant, which has been held bad as a promissory note.—*Osgood v. Pearsons,* 4 Gray (Mass.) 455. Here, there is in fact but one payee, Phelps being merely the representative of the plaintiff."

The above principles were recognized by this court in *Birmingham Matinee Club v. McCarty,* 152 Ala. 571, 44 South. 642, 13 L. R. A. (N. S.) 156, 15 Ann. Cas. 237.

Ordinarily the assignee of a non-negotiable note simply steps into the shoes of the payee of the note and takes the note subject to all the rights and equities which were attached to the note, and to all the defenses which existed against the note in the hands of the payee. The non-negotiability of the note gives, under ordinary circumstances, notice to the assignee of the note of such rights, equities, and defenses. The assignee of such a

note "acquires only the title which his indorser had, and takes the paper subject to all equities and defenses existing against it in the hands of his assignor."—4 Am. & Eng. Encyc. Law (2d Ed.) 156; *Wettlaufer v. Newton J. Baxter,* 137 Ky. 362, 125 S. W. 741, 26 L. R. A. (N. S.) 804.

By no stretch of the imagination can it be held that as between her and her husband, Mrs. Brooks, was not in law and in equity, if the allegations of the bill are true, the owner of the lease and the notes when they were assigned to Greil Bros. Company. When Greil Bros. Company obtained the notes it obtained them, if the allegations of the bill are true, impressed with all the legal and equitable rights which resided in Mrs. Brooks while they were in the hands of her husband. If the allegations of the bill are true, Greil Bros. Company stands in the shoes of the husband, and possesses no greater rights in or about the notes and lease than did the husband on the day that he made the transfer, and this, because of the nonnegotiability of the notes.

(3) 1. The best accepted doctrine with reference to the mere latent equity of a third party in a nonnegotiable instrument seems to be that such an equity is lost when such an instrument is assigned, for value, and the assignee has no notice of such equity at the time he acquires it.

"The law does not require that the assignee for value of a thing in action shall take it subject to the latent equities of third persons, of which he has no notice, but only that the assignment shall be subject to the equities existing in favor of the debtor."—*Wright v. Levy,* 12 Cal. 257; *Silverman v. Bullock,* 98 Ill. 11; *Mc-Connell v. Weinrich,* 16 Pa. 365; *Tison v. People's, etc., Ass'n,* 57 Ala. 323; *Goldthwaite v. National Bank,* 67

Ala. 549; 2 Am. & Eng. Ency. Law (2d Ed.) 1081, and notes.

(4) 2. In this state an undiscovered principal can always sue on a contract made by an agent for his benefit.—*Bell v. Reynolds & Lee,* 78 Ala. 511, 56 Am. Rep. 52.

(5) 3. It is also true that a third party, in order to avail himself, at the principal's suit, of any equities as against the agent, must be able to show that he did not know, and had no means of knowing, that the party with whom he was contracting was a mere agent in the transaction.—1 Am. & Eng. Ency. Law, p. 1171.

(6) 4. It would seem from the above that the bill in this case contains equity. If Greil Bros. Company can show by its answer, and by the evidence in support of it, that it acquired the notes described in this bill in such a way as that, in equity, it is entitled to protection against the claim of appellant, the burden is cast upon it of doing so. It may be that Mrs. Brooks has so conducted herself with reference to this matter as that in equity she is not entitled to consideration. On the face of the papers she is entitled to recover.

We are not here dealing with a case in which a mere landlord's lien has been destroyed. We are dealing with the question as to whether the agent, Mr. Brooks, has sold nonnegotiable instruments which belonged to his wife, and which he, the agent, had taken in his own name instead of that of his principal and conferred upon his assignee a good title, as against his principal, to the said nonnegotiable instruments. The presumptions of the law are with the principal, and the burden is upon the assignee to show that it is entitled to protection. If the assignee can show that "it is, in equity, entitled to protection," a court of equity will afford it to him.

The decree of the court below is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

ON APPLICATION FOR REHEARING.

THOMAS, J.—(7) When the cause of *Greil Bros. Co. et al. v. Brooks,* 176 Ala. 577, 58 South. 552, was first before this court, certain material averments of notice, as pointed out by Justice MAYFIELD, were wanting. Amendment to the bill, thereafter made, alleged the renting of appellant's land, by her husband, to Crenshaw, and the taking of the lease and rent notes in his name, "wholly without her knowledge, consent, or authority, and that until a short time before the filing of the original bill in this court complainant was ignorant of the facts that said lease was executed in the name of her husband, C. E. Brooks, and that said notes were made payable to him;" that her husband, without her knowledge or consent, transferred said rent notes to Greil Bros. Company, a corporation, "as collateral security for his indebtedness to said corporation, and that said Greil Bros. Company, at the time of the transfer of said rent notes to it by the said C. E. Brooks, and at the time it collected said rents from the said Anderson Crenshaw from complainant's plantation, had notice that the complainant was the owner of said plantation mentioned and described in the second paragraph of the original bill of complaint, and that as such owner she was entitled to the rents arising from said plantation; * * * that said Greil Bros. Company has

disposed of said rents; that it is chargeable as trustee in invitum for the same."

This was an allegation of knowledge by appellee of the ownership of the lands and the renting of the lands by Crenshaw, or of sufficient notice at least to put appellee on inquiry of C. E. Brooks' authority to take the lease and rent notes in his name, and to place the same with appellee as collateral security for his debts, and to deny its right to collect the rents from the tenant. The allegation of notice to the tenant was "that at the time he entered into said rental contract with the said C. E. Brooks and executed the rent notes to him, as hereinabove alleged, the said Anderson Crenshaw had notice that the complainant was the owner of said premises for which said lease and rent notes were given, and as such owner entitled to the rents arising from said plantation. * * * That after she discovered that said lease contract and said rent notes had been executed in the name of C. E. Brooks, she did * * * on September 17, 1910, notify the said Anderson Crenshaw that she claimed the rents for said lands above named, and directed him not to pay any of said rent for the year 1910, or any succeeding year, to any one except herself."

This allegation charged notice to the tenant of the breach of the trust by her husband and the repudiation of the unwarranted act of the husband and the tenant in giving and accepting the lease and rent notes payable to the husband for the rent of the wife's lands, and that she demanded of the tenant payment of the rents.

As to the authority of the husband, the bill specifically avers that the wife never gave him authority to rent, or to collect the rents on her lands in his own name, nor in any manner to dispose of said rents in his own name, or to use them for the payment, or as

security for the payment, of the individual debts of the husband.

The case now made by the amended pleading presents the equity of Mary E. Brooks, a third party to the lease and rent notes, growing out of the wrongful act of her husband and the tenant, Crenshaw, in giving and taking the lease and rent notes in the husband's name, in disregard of her rights as landlord. If the proof supports the pleadings, a trust was then impressed on the rents for the benefit of the appellant. When the lease and rent notes were given and the notes transferred, it was not necessary that such maker or transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation. It is sufficient that the purchaser or transferee acquired property upon which a trust was in fact impressed. If so impressed, the trust property, or the proceeds of its sale, may be followed so long as it can be identified, into the hands of all subsequent holders who are not in the position of bona fide purchasers for value without notice.—*Robinson v. Pierce,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; *Smith v. Perry,* 56 Ala. 266; *Oliver v. Piatt,* 3 How. 411, 11 L. Ed. 622; 3 Pom. Eq. Jur. § 1048; *Farmers' & Traders' Bank v. Fidelity Co. of Md.,* 56 S. W. 671, 22 Ky. Law Rep. 22; 2 Lead. Eq. Cases, 713, 273; *Central Nat. Bank v. Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693; *Holmes v. Gilmer,* 138 N. Y. 376, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463; *Silsbury v. McCoon,* 3 N. Y. 379, 53 Am. Dec. 307; *Twohy Mercantile Co. v. Melbye,* 78 Minn. 357, 81 N. W. 20.

The notes transferred to appellee were nonnegotiable. If Greil Bros. Company was a bona fide assignee of the notes for value, it took the notes discharged from any latent or secret equity in favor of third persons

of which it had no notice or knowledge.—*Dulin v. Hunter*, 98 Ala. 539, 13 South. 301; *Goldthwaite v. National Bank*, 67 Ala. 549; *Tison v. People's Sav. Assoc.*, 57 Ala. 323. Such was the rule declared by Lord Eldon, in *Redfearn v. Ferrier*, 1 Dowe Rep. 50, and by Chancellor Kent in *Murray v. Lylburn*, 2 Johns. Ch. (N. Y.) 441. If Greil Bros. Company knew of the equity of a third person, it would be chargeable.—*Summer v. Waugh*, 56 Ill. 531; *Albion State Bank v. Knickerbocker*, 125 Mich. 311, 84 N. W. 311; *Reid v. Sprague*, 72 N. Y. 457; *Rayburn v. Davisson*, 22 Or. 242, 29 Pac. 738.

(8) The assignee is not excused from the exercise of prudence and vigilance in making such inquiry as the circumstances of the case would suggest to a reasonably prudent man.—*Brunson v. Rosenheim*, 149 Ala. 112, 43 South. 31; *Pepper v. George*, 51 Ala. 190, 194; *Pippin v. Farmers' Warehouse Co.*, 167 Ala. 162, 51 South. 882; *Center v. P. & M. Bank*, 22 Ala. 743, 752; *Taylor v. A. & M. Assoc.*, 68 Ala. 229, 240; *First Nat. Bk. v. Nat. Broadway Bk.*, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139; *Mayor v. Williams*, 6 Md. 235; *Condit v. Maxwell*, 142 Mo. 266, 44 S. W. 467; *Tantum v. Green*, 21 N. J. Eq. 364; *Hartley v. Tatham*, 23 N. Y. Super. Ct. 273; *Swasey v. Emerson*, 168 Mass. 118, 46 N. E. 426, 60 Am. St. Rep. 368; Perry on Trusts, § 223; *Smith v. Burgess*, 133 Mass. 511.

In the cases of *Dulin v. Hunter, supra, Goldthwaite v. National Bank, supra,* and *Tison v. People's Assoc., supra,* the instruments against which equities of third parties were sought to be invoked were dealing with the properties of the makers, and not the property of a cestui que trust. The case before us is that dealt with in *Robinson v. Pierce*, 118 Ala. 301, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160, where a trustee, in

contravention of the trust, had disposed of the property of the cestui que trust; and it was there held that a purchaser from such trustee in contravention of the trust becomes a trustee in invitum, and that a court of equity will force a trust upon his conscience and compel him to perform it or to answer for its fruit.— *Butts v. Cooper,* 152 Ala. 375, 385, 44 South. 616.

In *Smyth v. Oliver,* 31 Ala. 39, Chief Justice Rice, for the court, declared that the husband had no right, without the consent of the wife, to sell and transfer a promissory note, constituting the bulk of her separate estate, which had been taken for the purchase money of her property, and that a purchaser from the husband, of such promissory note with notice, expressed or implied, of the wife's equitable right would be held a trustee for her benefit. In *Evans v. English,* 61 Ala. 416, 423, Chief Justice Brickell (discussing *Bolling v. Mock,* 35 Ala. 727) says: "The husband, having in his possession a promissory note the property of the wife, without her concurrence, transferred it in the purchase of property. The transfer was an excess of his power as trustee, a breach of trust, and did not divest the wife of her legal title to the note. * * * Of consequence, the only claim of the wife to the property purchased was equitable, growing out of the doctrine of implied or constructive trusts, which prevails only in a court of equity."

In *Bolling's Case* the note was not payable to the wife, but to the administrator. If we examine each of the authorities cited on the point by Justice Head in *Robinson v. Pierce, supra,* we find that the rule of bona fide purchaser for value without notice as to the equities of third parties (as declared in *Dulin v. Hunter, supra*) applies with equal force to bona fide purchasers for value without notice of trust properties. Judge

Story says: "Another instance, perhaps more comprehensive in its reach, in which courts of equity act by creating trusts in invitum, is, where a party purchases .trust property, knowing it to be such, from the trustee, in violation of the objects of the trust, courts of equity will force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it, in the same manner as the trustee himself held it."—2 Story, Eq. Jur., § 1257.

In Hill on Trustees (marg. p. 144), the rule is thus stated: "In cases of fraud, whether constructive or actual, courts of equity have adopted principles extremely broad and comprehensive in the application of their remedial justice; and, especially where there is any fraud affecting the acquisition of property, they will interfere and administer the wholesome justice, and sometimes even a stern justice, in favor of innocent persons who are sufferers by it, without any fault on their own side. And this is done by converting the offending party into a trustee, and making the property itself subservient to the proper purposes of recompense, by way of equitable trust."

Mr. Perry, in his work on Trusts (5th Ed.) § 217, declares: "It is a universal rule that if a man purchases property of a trustee with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased. And even if he pays a valuable consideration, with notice of the equitable rights of a third person he shall hold the property subject to the equitable interests of such third person. * * * Such purchases from trustee, whether for value or not, are fraudulent, and equity will follow the property and fasten the original trust upon it for the security of the cestui que trust, or other person holding an equitable interest."

And in section 241 he declares: "Another instance of a constructive trust without fraud is where a person receives the trust property from the trustee without notice of the trust, by way of voluntary gift or without paying a valuable consideration. If such person had notice of the trust, it would be a fraud to receive the trust fund even if he paid a valuable consideration, and he would be held as a constructive trustee."

In the case of *Clay v. Sullivan*, 156 Ala. 392, 396, 47 South. 153, 154, the property in question was the wife's ring; she had given the husband "no authority to dispose of it, and he turned it over to" another, who was held "liable for conversion." The court said: "It is clear, from the evidence and the law, that the plaintiff was the owner of the ring, and that the defendant Clay so intermeddled with the same as to render him liable in trover for a conversion, unless the husband had authority from the wife to pledge it, not to secure his debt, but, as her agent, to hypothecate it for her benefit."

These authorities are not in conflict with *Bennett v. Brooks,* 146 Ala. 490, 494, 41 South. 149, 150, where Justice Anderson said: "The undisputed evidence showed that the hulls belonged to the plaintiff when converted by the defendants, who got them from Johnson, and, as the said Johnson had no title thereto, his vendee could acquire no better title than he had, whether purchased with or without notice of plaintiff's title and for a valuable consideration. 'One who, though acting in good faith, purchases a chattel from a person in possession, but without title or authority, or indicia of authority, from the true owner to sell, acquires as against the true owner no title, and the latter may maintain trover for its conversion.' "

The learned justice was careful to limit the rule to the purchase of a chattel from a person in possession without title or authority or indicia of authority. In *Mobile & Montgomery Railway Co. v. Felrath,* 67 Ala. 189, Chief Justice Brickell declared that when an agent has misapplied or misused the property of his principal, the latter may pursue and recover it. But if the agent had the right to convert into money property of the principal having no "earmarks," and which cannot be identified after passing into the possession of another who acquires it for value and without notice, it cannot be reclaimed.

The case now made by the bill is, not that the property was converted into money, but that there was a hypothecation, as collateral security for the agent's debts, of rent notes for a five-year lease before any one of the annual rent notes became due. Was this the due course of collection or disposition of a landlord's annual rents? According to the averments of the bill, it was a conversion of the rent of Mary E. Brooks by her husband, who had been intrusted by her with the renting of her lands and the collection of the rents thereon when due, and instructed to apply the proceeds, when collected, on the wife's mortgage debts.

It was declared the law in the time of Lord Mansfield "that though a factor has power to sell, and thereby bind his principal, yet he cannot bind or affect the property or the goods by pledging them as a security for his own debt, though there is the formality of a bill of parcels and a receipt."—*Patterson v. Tash,* 1 Strange, 1178.

Whether the case be decided on the theory of a constructive trust or on that of an unauthorized sale and transfer of a nonnegotiable rent note by an agent, the transferees of the notes must account therefor to the real owner, unless they can show that they were bona

fide purchasers for a valuable consideration, and without notice of the rights of the real owner, or without knowledge of facts that would put a reasonably careful man on inquiry which, if pursued, would lead to a knowledge of the ownership of the rent notes in question.

The application for a rehearing is overruled.

ANDERSON, C. J., and MCCLELLAN, SOMERVILLE and THOMAS, JJ., concur. MAYFIELD and SAYRE, JJ., dissent. GARDNER, J., not sitting.