# Tison and Gordon *v.* People's Saving and Loan Association.

## *Bill in Equity by Assignees of Mortgage, to Foreclose; with Cross-bill by other Claimants.*

1. *Statutory lien for advances to make crop; what necessary to constitute.* To constitute a statutory lien "for advances to make a crop," (Revised Code, § 1858), the advances must be made in "horses, mules, oxen, or necessary provisions, farming tools and implements, or money to purchase the same," which must be expressed in the writing. A written instrument, which declares its consideration to be a present debt for money advanced to the makers *bona fide,* "to enable them to make a crop the present year, and without which advance it would not be in their power to procure the necessary teams, provisions, farming implements, and other materials essential to making such crop," does not contain the essentials of a statutory lien.

2. *Same; may be valid as a mortgage, though defective as a statutory lien; parol proof that instrument was intended for future advances, &c.*—A written instrument, though defective as a statutory lien for advances, may nevertheless be valid and operative as a mortgage; and, as between the immediate parties, though the consideration be declared to be a present debt for money advanced, it may be shown by parol to have been intended as a security for future advances and contingent liabilities, and allowed to stand as a security for such advances and liabilities, to an amount not exceeding the sum specified.

3. *Same; assignment of the debt and mortgage.*—An assignment of such a mortgage, and of the debt for advances made under it, passes to the assignee the legal and equitable title to the property conveyed, freed from any equity in favor of the holder of the debt on which the mortgagee was bound as accommodation-acceptor, and of which the assignee had no actual notice.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. N. S. GRAHAM.

On the 12th of February, 1873, William H. Locke, J. W. Oatis, W. O. Sylvester, and John E. Engram, executed and delivered to M. H. Streater & Co., a partnership in Eufaula, Alabama, a mortgage deed or crop lien, as follows:

"State of Alabama, Barbour county. Know all men by these presents, that we, W. H. Locke, James W. Oatis, William O. Sylvester, and John E. Engram, being justly indebted to the firm of M. H. Streater & Co., in the sum of ten thousand dollars, due on the first day of November, 1873, which sum of money has been advanced to us by said M. H. Streater & Co., *bona fide,* for the purpose of enabling us to make our crops during the year 1873, and without which advance it would not be in our power to procure the

[Tison and Gordon v. People's Saving and Loan Association.]

necessary teams, provisions, farming implements, and other materials essential to making said crops, have, for the purpose of securing the payment thereof, granted and sold, and do, by these presents, grant and sell unto the said M. H. Streater & Co., their heirs and assigns, forever, the following described property, to-wit: Seventy-five bales of cotton, to be raised the present year, on the S. J. Flournoy plantation, four miles north of the city of Eufaula, run and controlled by the said W. H. Locke; fifty bales of cotton, to be raised the present year, on the J. W. Oatis plantation, near Fort Browder, owned and controlled by J. W. Oatis; fifty bales of cotton, raised the present year, on W. O. Sylvester's plantation, near Williams' Station, known as the McSwain plantation, but now owned and controlled by said W. O. Sylvester; fifty bales of cotton, to be raised the present year, on the Malone plantation, seven miles north of Eufaula, run and controlled by said John E. Engram; all of said cotton to be stored in M. H. Streater & Co.'s warehouse, known as the City Warehouse; and we also contract and agree that said M. H. Streater & Co. shall have a lien of, and upon said property, to secure the payment of said advance in accordance with the act of the General Assembly of Alabama, approved the 16th of January, 1866, and amended 25th·of February, 1867, entitled an act to give a lien upon the crop for advances to assist in making the crop; to have and to hold the said property to the said M. H. Streater & Co., their heirs and assigns forever. And we do hereby authorize and empower the said M. H. Streater & Co., their agent or attorney, to seize and take into their possession any part or the whole of said property, at any time after the date hereof, and to retain said property in their possession until the maturity of said indebtedness, if sooner seized, and then to sell the same at public outcry to the highest bidder for cash, at Eufaula, Alabama, after giving five days' notice of the said sale by posting advertisement on the court-house door and two other places in said county, at which sale the said M. H. Streater & Co., their agents or attorneys, may bid for and become the purchasers of any or all of said property, and out of the proceeds of said sale the expenses thereof and the said indebtedness be paid, and the balance, if any, be paid to us; and it is further contracted and agreed that the said M. H. Streater & Co. be and they are hereby invested with all the rights granted by said act, and any amendments thereto, and are empowered thereto to enforce the same, and to collect said indebtedness, and by enforcing.

[Tison and Gordon v. People's Saving and Loan Association.]

the lien therein described; provided nevertheless, if said indebtedness is paid at maturity, this conveyance is to be void and of no effect. Witness our hands and seals, this 12th day of February, 1873."

It is averred in the bill that said mortgage was executed to secure a contemporaneous debt, or to secure advances to be thereafter made, and that said debt would not have been created, nor advances made, but for the execution of said mortgage. Said mortgage was filed and recorded in the probate office of Barbour county on February 21, 1873. On the 8th of July, 1873, M. H. Streater & Co. assigned the mortgage to appellants, Tison and Gordon, for a valuable consideration. Tison and Gordon, it appears, had no notice of any interest on the part of the People's Saving and Loan Association in said contract, but had notice that there was due by said Locke, Oatis, Sylvester, and Engram to said M. H. Streater & Co. the sum of two thousand dollars on said contract. The cotton in question was a part of the cotton embraced in the mortgage. It is claimed by the appellee that the proof shows that the mortgage was executed to secure the acceptance of two thousand five hundred dollars, which it discounted for Locke. H. C. Hart, A. A. Walker, and W. H. Locke testify to this fact. The other parties to the contract, namely, Sylvester, Oatis, and Engram, who executed it jointly with Locke, swear that they knew nothing of said draft, and never received any money from the People's Saving and Loan Association, and that the consideration of said mortgage or crop lien was the advances to be furnished by Streater & Co. A. A. Couric and John J. Carter, the only surviving members of the firm of M. H. Streater & Co., also testify (they were the only other parties to the contract) that the sole consideration of said mortgage was the repayment of supplies and advances furnished and to be furnished by Streater & Co. to the makers of said mortgage. J. B. Besson, the book-keeper of Streater & Co., also testifies to the same thing. The evidence shows that there was a debt of about two thousand dollars due by Locke, Oatis, Sylvester, and Engram to M. H. Streater & Co. under the mortgage. The evidence also seems to show, in brief, that Tison and Gordon found Streater & Co., on July 8, 1873, in possession of this mortgage, with a debt, as they were then informed, of a considerable amount due on it. For a valuable consideration Streater & Co. transferred the "claim" and "mortgage" to said Tison and Gordon. Tison and Gordon claim to have had no knowledge, notice, or in-

[Tison and Gordon v. People's Saving and Loan Association.]

formation of any interest in said mortgage by the People's Saving and Loan Association. When Tison and Gordon, however, file their bill to foreclose said mortgage, the Saving and Loan Association sets up a claim by a cross-bill to a part of the mortgaged property.

The chancellor, on a hearing in vacation, by consent, adjudged that complainants were not entitled to the relief sought by their bill, and decreed that the same be dismissed. Said decree is now assigned as error.

BUFORD and DENT, and A. H. MERRILL, for appellants. 1. Even if this was a crop lien, it was also a mortgage, and. capable of assignment in such a way that a court of equity will protect the interest of the assignee. The contract would be good as a mortgage, even if sections 1858–9–60 of the Revised Code did not exist.—See *Jones' Administrator v. Webster et al.* 48 Ala. 109; *Butt v. Ellett*, 19 Wall. 544. The mortgage or crop lien became a chose in action capable of being transferred—was, in fact, before maturity, transferred—and we insist that Tison and Gordon hold it as innocent purchasers without notice. In support of the proposition that the equity of Tison and Gordon is better than that of the People's Saving and Loan Association, we refer to the following authorities: *Livingston v. Dean*, 2 John. Chan. Rep. 479; *Murray v. Lylburn*, *ib.* 441; 1 Hill on Mortgages, §§ 65, 66; *Calais Steamboat Co. v. Schudder*, 2 Black's United States Supreme Court Reports, 372; *Carpenter v. Logan*, 16 Wallace, 271; also, *Kenicott v. The Supervisors*, 16 Wallace, 452; *The National Bank of Washington v. Texas*, 20 Wallace, 72—especially the opinion of Justice SWAYNE, on pages 88, 89 and 90; *Hotchkiss v. The Shoe and Leather Bank*—decided at the October term, 1874, of the United States Supreme Court; *Pierce v. Faunce*, 47 Maine Reports, 507; *Pryor v. Wood*, 31 Penn. Stat. Reports, 142—the second head-note of which is as follows: "The *bona fide* purchaser of a mortgage for a valuable consideration, takes it discharged of all secret equities of which he had no notice."

3. The case of *Winston v. Westfeld*, 22 Ala. 760, shows how far the doctrine of innocent purchaser without notice, of a negotiable paper before maturity, was carried. This mortgage was negotiable; it was negotiated before maturity. Therefore, Tison and Gordon should be protected.—See, also, *Murray v. Lardner*, 2 Wallace, 110; see, also, *Goodman v. Simonds*, 20 Howard, 343; see, also, *James v. Morey*, 2. Cowen N. Y. Reports, 246.

[Tison and Gordon v. People's Saving and Loan Association.]

4.  Attention is respectfully called to section 1838, Revised Code, which seems to bear on the case in authorizing a transfer or assignment of the claim and mortgage from Locke, Oatis, Engram and Sylvester to Streater & Co., by said Streater & Co. to Tison and Gordon, appellants.—See 2 Brick. Dig. 338; *Phillips v. Sellers*, 42 Ala. 658; *Skinner v. Bedell's Administrator*, 32 Ala. 44; *Murdock v. Caruthers*, 21. Ala. 785; *Lehman, Durr & Co. v. Marshall*, 47 Ala. 362.

5.  As the law then seems to authorize such transfer, it would be inconsistent not to conclude that the title and rights acquired by the transferee were superior to the latent equity of any third party.—See *Dudley v. Abner*, June term, 1875; also, see *Livingstone v. Dean*, 2 Johns. Chan. Rep. 441; *Pryor v. Wood*, 31 Penn. 142; *James v. Morey*, 2 Cowen (N. Y.) 246; 1 Hill. on Mort. § 65, *et seq.; Calais Steamboat Co. v. Schudder et al.* 2 Black. U. S. 372; *Carpenter v. Logan*, 16 Wall. 271; *Kennicott v. The Supervisors*, 16 Wall. 452.; *Pierce v. Faunck*, 47 Me. 507.

6.  Then, if there was a debt under the mortgage, Tison and Gordon are entitled to it. On this point the proof preponderates overwhelmingly, showing that there was a mortgage debt, and that Tison and Gordon purchased the same for a valuable consideration without notice of the latent equity of the people's Saving and Loan Association. There was nothing to put them upon inquiry, nothing in the mortgage to excite their suspicion of the existence of the Saving Association; consequently, the equity of Tison and Gordon is superior to that of the appellees.

J. D. ROQUEMORE, PUGH & COCHRAN, *contra.*—1. Tyson and Gordon, the assignees of the mortgage executed by Locke et al., took it "subject to all the defenses and equities existing against the debt it was given to secure at the time of the assignment."—*Smith v. Pettus*, Stew. & Porter,107; *Tuscumbia, Courtland and Decatur R. R. Co. v. Rhodes*, 8 Ala. 206; *Lang v. Russell & Moore*, 2 Stew. (Ala.) 420; 5 Denis, 640; *Ellis v. Messervie*, 11 Paige, 467; *Commercial Bank of Rochester v. Colt et al.* 15 Barb. (N. Y.) 506; *Coell v. Tradesman's Bank*, 1 Paige, 131; 1 Parsons on Cont. § 3, ch. 14, p. 229; 1 Brick. Dig. "Assignments," p. 127.

2.  That this was not a debt of such character as to entitle Tison and Gordon to the protection as against the world, they being "innocent purchasers for valuable consideration without notice," see authorities cited *supra*, and *Willis v. Twambly*, 13 Mass. 204; *Mangles v. Dixon*, 18 Eng. L. &

[Tison and Gordon v. People's Saving and Loan Association.]

Eq. 82; *Stocks v. Dobson,* 19 Eng. L. & Eq. 96; 1 Par. Cont. 227, note *g.*

The cases of Murray & Lylburn, in 2 Johns. Ch. Rep. and two or three other old New York cases which seem to hold a contrary doctrine, are reviewed at length and over-ruled, in fact, by DENIS, J., in a well considered opinion in *Bush v. Lathrop,* 22 N. Y. (8 Smith) 535.

This last case " repudiates" the doctrine, that in a case almost identical with the one at bar, " third parties " can have " latent equities that *may* be prejudiced by purchasers for value without notice." They decide that persons holding " latent equities" must be protected in such a case as this, as against " purchasers for value without notice."

3.   It should be borne in mind, that in this case it is not " third parties" who are seeking to establish " latent equities," but those who are parties to the original mortgage and contract, to-wit: Locke, Oatis, *et al.*—See their answer and cross-bill to the original bill filed by Tison and Gordon.

4.   In the case of *Calais Steamboat Co. v. Van Pelt's Administrator,* in 2 Black, personal property was in controversy, and the second owner of the property caused his ownership to be concealed, and he held out his agent as the absolute owner, and did everything to conceal his own interest in the property, and if the purchaser in that case had made inquiry as to who were the owners, the facts show that Van Pelt's title would have been concealed.   Van Pelt, by his *own acts,* clearly estopped himself.

In the case at bar nothing was ever done by any of the parties seeking relief which in the least contributed to mis-lead the purchasers, Tison and Gordon.

Again, this case is totally different from the one cited in 2 Black, in this, that in the case in Black, personal property was sold, and in this case a *mere chose in action,* an *unexpected* contract was transferred.

Where two parties have conflicting equities, the rule is, that the oldest equity must prevail.

5.   The debt transferred was not a commercial paper, and the assignees took it *cum onore.*—*Commercial Bank of Rochester v. Colt et al.* 15 Barb. 504.

BRICKELL, C. J.—1. We can not concur with the chancellor in the opinion, that the instrument under which each of the contending parties deduces title to the cotton in controversy, is operative as a lien under the statute, (Revised Code, §§ 1858–60.)   Nor, if we concurred in the opinion,

, can we suppose it would enure to the benefit of the Saving and Loan Association, so as to entitle it to priority over the appellants. The statutory lien can be created only by writing, and as a security for a debt having the particular consideration expressed in the statute, and this consideration must be in writing—*an advance of horses, mules, oxen, or necessary provisions, farming tools and implements, or money to purchase the same.* The instrument in question, expresses as its purpose, the security of a present debt, owing by its makers to Streater & Co.; and the consideration of this debt as money which had been advanced them, "*bona fide, for the purpose of enabling us to make our crops during the year 1873, and without which advance it would not be in our power to procure the necessary teams, provisions, farming implements and other materials essential to making such crops.*" The object of the advance of the money, as expressed in the instrument, was to enable the makers to make crops in 1873. The compensation of laborers, the repairs of plantations, were as much within the object of the advance, as the purchase of horses, mules, oxen, or necessary provisions, farming tools and implements. All *are essential* to the making of crops of cotton to the extent it was contemplated the makers of the instrument would make them. The statutory lien is of peculiar privileges, and extraordinary remedies are allowed for its enforcement. The intention of the legislature to limit it to debts having the specific consideration expressed in the statute, and no other, is apparent. However meritorious may be the consideration of other debts, and however sufficient to support a mortgage, or assignment, or other conveyance, they are insufficient for the creation of the statutory lien.—*McLester v. Somerville & McEachin,* manuscript.

If the recitals of the instrument were of facts on which the statutory lien could be founded, the evidence leaves no room to doubt that such facts had no existence at the time of its execution. The lien can not be created by recitals in the instrument which is the evidence of it. These recitals must be supported by corresponding facts. It is the existence of these facts, and their declaration in writing, which creates the lien. The declaration, without the facts, is as impotent for the creation of the lien, as would be the facts without the declaration. Though the instrument recites, as its consideration and as its purpose, the security of a present debt for money advanced, no such debt had been contracted; no such advance had been made at the time of its execution. The real transaction in which the instrument originated, and

[Tison and Gordon v. People's Saving and Loan Association.]

its actual consideration, was security for advances it was contemplated Streater & Co. would make to the grantors, as they needed such advances in cultivating the designated plantations in 1873. One of the disputed facts is, whether indemnity to Streater & Co. against loss, because of their acceptance for accommodation, of the bill of exchange drawn by Locke, did not enter into and form part of the consideration and of the purposes of the instrument. We do not propose to examine the evidence with the view of determining whether such indemnity formed part of the consideration and purpose of the instrument. If it did, it is certainly not within the consideration defined by the statute. Indemnity against liability, absolute or contingent, incurred at the request of the maker, must be secured by mortgage or other appropriate conveyance. The statutory lien can not be raised for such purpose.

2. While the instrument is not operative as a statutory lien, it is valid as a mortgage. A mortgage may unquestionably be taken as a security for future advances and responsibilities. That the consideration expressed is a present debt, fraud not being imputable, and the rights of parties misled by the misrecital not being involved, does not prevent the introduction of parol proof to show that the real consideration was security for future advances, or protection to the mortgagees against a liability to be incurred for the mortgagors. *Eckles v. Carter*, 26 Ala. 563; *Hair v. Little*, 28 Ala. 236. In *Shirras v. Caig*, 7 Cranch. 34, a mortgage was executed, purporting to be a security for a present debt of £30,000. It was really intended to secure a present debt much less in amount, and advances afterwards to be made, and liabilities to be incurred to an uncertain amount. It was decreed to stand as a security, not only for the debts due at its execution, but for those subsequently contracted on its faith, and for advances subsequently made. There are numerous cases to be found in the books, in which, as between the parties, the equities of subsequent mortgagees, or of judgment creditors, without notice, not intervening, a mortgage declaring its purpose to be the security of a present debt, the amount of which is expressed, has been declared a valid security for future advances to the extent of the amount expressed. Parol evidence in such cases is admissible, not to contradict, but to support the instrument—to show its real consideration, and the extent to which it operates as a security.—*Bank of Atica v. Finch*, 3 Barb. Ch. 293; *James v. Johnson*, 6 John. Ch. 417; *Craig v. Tappin*, 2 Sand. Ch. 78; *Collins v. Carlisle*, 13 Ill. 254.

[Tison and Gordon v. People's Saving and Loan Association.]

The parties to the transaction, the mortgagors and mortgagees, were dealing with each other fairly, in the utmost confidence, and with no motive to deceive others. The mortgagors were anxious to obtain assurances that they would be supplied with money, provisions, teams, or whatever necessaries they should need in the cultivation of their crops. It could not be known to what precise amount such advances would be required. They inserted ten thousand dollars, supposing that amount would cover such advances, and if indemnity against the liability incurred by the acceptance of the bill of exchange, was a part of the consideration, that it would also cover such indemnity. The consideration was expressed as a present, actual debt, because that was the form of mortgage most familiar to the parties.

3. We hold the instrument valid as a mortgage, and that it operates as a security for such advances as the mortgagees may have made on the faith of it, subsequent to its execution. An assignment of the debts contracted for such advances, would in equity pass the mortgage, which is but a security for their payment. There is, however, not only a transfer of the debts, but an assignment of the mortgage to the appellants, thus transferring the legal title it conveyed.—*Graham v. Newman*, 21 Ala. 487.

Assuming the mortgage was intended, not only as a security for future advances, but also as indemnity to the mortgagees against their acceptance of the bill of exchange, drawn by Locke, the question arises, whether the appellants are bound by the equity of the holder of that bill, to be subrogated to the security for its payment, the mortgage was intended to afford. The assignee of a mortgage, intended as security for a debt which is not negotiable, stands in the light of an assignee of a mere chose in action. The general and well settled principle is, that the assignee of a chose in action takes it subject to all the defenses and equities existing against it at the time of the assignment. The rule is generally supposed to extend only to the equities and defenses of the mortgagor, and not an equity residing in some third person against the assignor, of which the assignee has no notice. *Murray v. Lylburn*, 2 Johns. Ch. 441; *Livingston v. Dean, ib.* 479; *Mott v. Clark*, 9 Penn. St. 399. In the case first cited, it was said by Chancellor KENT: "The assignee can always go to the debtor and ascertain what claims he may have against the bond, or other *chose in action*, which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some

third person against the obligee. He has not any object to which he can divert his inquiries; and for this reason, the claim of the assignee, without notice, of a chose in action, was preferred, in the late case of *Redfram v. Ferrier* and others, (1 Dowe Rep. 50), to that of a third party setting up a select equity against the assignor. Lord ELDON observed in that case, that " if it were not to be so, no assignments could ever be taken with safety." The purpose of the mortgage as expressed on its face, is the security of a debt for advances, excluding, rather than indicating, that indemnity for a liability, absolute or contingent, incurred by the mortgagees for the mortgagors, was within its objects. This expression was well calculated to confine the inquiry of the assignees to the mortgagors, and to the fact of the extent of the advances. Locke, who seems to have been the active agent in the negotiations preceding the execution of the mortgage, and subsequently in obtaining advances, was notified of the assignment soon after it was made, and the notice did not provoke from him any disclosure that it was intended for any other purpose than security for advances. There was no object to which the appellants could have directed inquiry, and if they did not take the mortgage freed from the latent equity, now preferred against them—an equity resting in parol, and known only to Locke, one of the mortgagors, Streater, one of the mortgagees, and two of the officers of the Savings and Loan Association—never disclosed, until after Streater's death, and it becomes certain the mortgage is an insufficient security for the debt assigned to appellants, *no assignment can ever be taken with safety.*

If loss ensues to the Saving and Loan Association, and the mortgage was really intended as a security to Streater & Co. against the liability on the accommodation-acceptance of the bill of exchange drawn by Locke, the loss is the result of their own laches. They were informed the mortgage was to be executed, and if they relied on it as a security directly to them, or enuring to them through the liability of the acceptors, they should have seen the mortgage was so framed, as to give notice to all who might deal with mortgagor or mortgagee, of their rights or equities. They trusted to Locke and Streater to frame the mortgage and to their representations of its purposes. If the mortgage was so framed by those whom they trusted, that others in the ordinary course of business would deal with the mortgagees without notice, or without reason to suspect they were not the absolute owners, the loss of misplaced confidence must

be borne by them. It is not insisted the appellants had notice that security for any other debts than those transferred to them, debts for advances to the mortgagors, was intended, and it is not denied they are *bona fide* assignees for a valuable consideration. They are entitled to priority of payment of the debts transferred to them from the cotton in controversy.

The decree of the chancellor must be reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.