# Hendon v. Morris.

*Bill in Equity to reform and foreclose Mortgage.*

1. *Bill to reform and foreclose mortgage; not multifarious.*—After the law day of a mortgage has passed, the mortgagee may resort to a court of equity to have the mortgage reformed and for its foreclosure as reformed; and a bill filed for these purposes is not multifarious.

2. *Mortgagee and mortgagor; subsequent mortgagee with notice can attack prior mortgage only for fraud.*—A subsequent mortgagee, having notice of the existence of the prior mortgage, can impeach such prior mortgage only for fraud in fact; and the burden of proving *mala fides* in the execution of the prior mortgage is upon the attacking mortgagee.

3. *Same; when insolvency of mortgagor not shown.*—Insolvency is not

[Hendon v. Morris.]

imputable when a debtor has property, subject to legal process, sufficient to meet all his liabilities; and the insistence by a subsequent mortgagee, that the prior mortgage was infected with actual fraud on the ground, primarily, that the mortgagor was insolvent at the time of the execution of such mortgage, is not supported by the evidence, when it is shown that the aggregate of the mortgagor's debts was not equal to the value of the lands mortgaged, and that he had other lands occupied as a homestead and also owned personal property.

4.  *Mortgages; note for future advances sufficient consideration.*—When the debt to secure the payment of which a mortgage is given is evidenced by promissory note, and the consideration of the note is the satisfaction by the payee of an outstanding mortgage on the lands and a promise by him to make future advances to the mortgagor during the current year, the mortgage rests upon a valuable consideration.

5.  *Same; same; parol evidence of the consideration admissible.*—Parol evidence is admissible to show that the consideration of a note. and of the mortgage given to secure its payment, is the promise of the payee and mortgagee to make future advances to the mortgagor.

6.  *Debtor and creditor; several securities do not invalidate a mortgage.* A creditor may take any number of securities for the payment of his debt, without subjecting himself or the debtor to suspicion, if the debtor is solvent, or even if he is insolvent, provided the securities are not so excessive as to indicate a purpose to shield the debtor's property from the reach of other creditors; and the fact that a mortgagee also took a crop lien as additional security for future advances, which debt was already evidenced by a note and secured by a mortgage is not a circumstance affecting the validity of the mortgage, the mortgagor being solvent at the time of its execution.

APPEAL from the Chancery Court of Walker

Heard before Hon. THOMAS COBBS.

On September 16, 1893, the appellee, S. N. Morris filed a bill against C. D. Guttery and M. A. Guttery, his wife. The bill averred that on February 9, 1892, the defendants executed to the complainant a mortgage to secure an indebtedness of $250 on certain lands, which were described in the mortgage as follows : "an undivided half interest in the E. ½ of the S. E. ¼ of Sec. 7, and the N. W. ¼ of the N. W. ¼ and the N. ½ of the S. W. ¼ of the N. W. ¼ Sec. 17, except the mineral interest in the above described land, and the following land in fee simple, to-wit : the N. E. ¼ of the N. E. ¼ and the S. E. ¼ of the N. E. ¼, except 4 acres more or less in the S. E.

[Hendon v. Morris.]

corner sold and deeded heretofore by William Guttery to T. J. King, in all 216 acres more or less, all in township 14, range 8 west, warranted free from incumbrance and against adverse claims." The bill further averred "That at the time of the drafting and execution of said mortgage it was the intention both of the complainant and defendants, C. D. and M. A. Guttery, to convey by said mortgage the N. E. ¼ of the N. E. ¼ and the S. E. ¼ of the N. E. ¼ of section 18, except four acres more or less in the S. E. corner sold and deeded heretofore by William Guttery to T. J. King, all in township 14, range 8 west, but by mistake and through the inadvertence of the draughtsman of said mortgage the section to-wit '18' was omitted from said mortgage."

The prayer of the bill was that the description of the property conveyed in the mortgage should be corrected so as to show that the lands were in section 18, and that after such correction the mortgage should be foreclosed for the payment and satisfaction of the indebtednees secured by the mortgage. Subsequently the bill was amended by making T. S. Hendon, the appellant, a party defendant, and by averring that on April 20, 1893, the defendants, C. D. Guttery and his wife, M. A. Guttery, executed a mortgage to T. S. Hendon on the lands mentioned in the bill, to secure certain indebtedness, which was due him by the defendants at that time; but that at the time of the excution of said mortgage, T. S. Hendon knew that the lands which were the lands described in the mortgage to the complainant, were intended to be properly contained therein.

There were decrees *pro confesso* against C. D. Guttery and M. A. Guttery. The defendant T. S. Hendon answered the bill and in his answer alleged that at the time of the execution of the mortgage to the complainant, C. D. Guttery and M. A. Guttery were not indebted to him in any amount, and that the said mortgage and note referred to therein were without consideration, and that at the time of the execution thereof Guttery was wholly insolvent, and was unable to pay his just debts due to the respondent and several other creditors, who were pressing him for payment; that the said mortgage to the complainant was made for the purpose of hindering, delaying and defrauding his creditors, without consideration, and that the complainant knew of the fraud-

ulent and covinous intent, or was in possession of facts calculated to excite suspicion, which if diligently followed up would have led him to a discovery of such intention. The respondent then avers that on May 19, 1890, C. D. Guttery and M. A. Guttery were indebted to him in the sum of $150, as evidenced by their bond, and that on that day they executed a mortgage to him to secure the payment of said indebtedness, upon property which was described in said mortgage as follows: "The mineral interest only in and to the E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, except 4 acres in the S. E. corner of section 18; the N. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of section 17, 9 acres more or less, all in township 14, range 8;" that by mistake, over-sight or inadvertence of the parties to this mortgage, or through the unskillfulness of the draughtsman who prepared it, the lands which were intended to be conveyed in said mortgage in section 18 were omitted therefrom, and that instead of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ in section 18, and land should have been described as the E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 18, and that such was the intention of the parties to said instrument. The respondent further averred that on April 20, 1893, C. D. Guttery and his wife, M. A. Guttery, were indebted to him in the sum of $175, as evidenced by their promissory note, and that in order to secure the same, they did, on that day, execute a mortgage on lands situated in said county and described as follows: The surface only of their undivided one-half interest in the E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ section 7; E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, section 18, except five acres more or less in the south-east corner of said fraction; N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ and N. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ section 17, township 14 range 8," that the 1st of the said mortgages above described was recorded in the probate office of said county on May 22, 1890, and the second was filed for record and recorded on May 18, 1893. The respondent further averred that when the complainant took the mortgage from C. D. and M. A. Guttery, described in the bill, he knew of the mistake in respondents first mortgage, and that therefore the mortgage to the complainant upon the E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 18, is subject and subordinate to the mortgage of the respondent, which was executed on May 19, 1890.

The respondent prayed that his answer be taken as a

cross-bill, and that upon the final hearing of the cause, a decree be rendered correcting and reforming the mortgage executed on May 19, 1890, so as to have the land described therein as the E. ½ of the N. E. ¼ of section 18, instead of the E. ½ of the N. W. ¼ of section 18, and that when so corrected a decree of foreclosure be rendered, and that the second mortgage executed by the respondent on April 20, 1893, be also foreclosed.

The complainant demurred to the cross-bill on the ground that it was multifarious, in that it is a creditor's bill, and also a bill for a foreclosure and reformation of a mortgage.

The evidence tended to show that the mortgage to the complainant Morris was given to secure the payment for advances to be made to C. D. Guttery during that current year, and to secure the payment to Morris of $100, which he had contracted to pay to one Boshell in payment of an indebtedness due said Boshell from said C. D. Guttery; and that at the the time of the execution of the mortgage, the mortgagors also executed to the complainant Morris a crop lien for $250, as additional security for the payment of the debt which was evidenced by a note; that at the time of the execution of the mortgage Morris did not know that Hendon claimed any interest in the property owned by C. D. Guttery, except a mineral interest as shown by the mortgage to him. It was also shown that it was intended that the mortgage to Morris should convey the E. ½ of the N. E. ¼ of section 18, except 4 acres in the S. E. corner. The evidence for the defendant and the cross-complainant sustained the averments of the cross-bill as to the execution of each of the mortgages described therein, and also as to the mistake which was made in the description of the property conveyed in the first mortgage. The evidence showed that at the time of the execution of the mortgage to the complainant Morris, C. D. Guttery's whole indebtedness amounted to not exceeding $415, while the value of the property conveyed in said mortgage was $500, and that C. D. Guttery also owned other property. There was some evidence for the respondent and cross-complainant that C. D. Guttery had said that the mortgage made to Morris was a scheme by which it was intended to prevent Hendon from the collection of the mortgage made on May 19, 1890.

[Hendon v. Morris.]

On the final submission of the cause, on the pleadings and proof, the chancellor overruled the demurrer of the complainant to the cross-bill, and further decreed that the complainant was entitled to have the mortgage reformed so as to correctly describe the lands intended to be conveyed therein. It was further decreed that the cross-complainant was entitled to have the mortgage executed to him by C. D. Guttery and his wife, on May 19, 1890, corrected and reformed so as to make the description of the lands therein conveyed to read as "the mineral interest only in and to the E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$, except 4 acres in the S. E. corner, section 18," &c.; and that the cross-complainant was entitled to a foreclosure of said mortgage as corrected and reformed, as to the mineral interest, in priority of the complainant Morris's mortgage. It was then decreed that the complainant, S. N. Morris was entitled to a foreclosure of his mortgage as corrected and reformed, subject to the prior lien declared in favor of the cross-complainant, as to the mortgage executed on May 19, 1890; and that the cross-complainant Hendon was entitled to a foreclosure of the mortgage executed on April 20, 1893, subject to the prior liens above declared. From this decree the present appeal is prosecuted, and the same is here assigned as error.

APPLING, McGUIRE & COLLIER, for appellant.—The mortgage to the plaintiff was fraudulent and void as to the appellant's second mortgage. The alleged debt intended to be secured thereby was fictitious and simulated. Therefore, the Morris mortgage should be subordinate to both of the defendant's mortgages.—*McGhee v. Bank*, 93 Ala. 192; *Pickett v. Pipkin*, 64 Ala. 520; *Seals v. Robinson*, 75 Ala. 371. There was nothing in the mortgage to show that the consideration thereof was to secure future advances. Therefore its tendency was clearly to hinder and delay the creditors of the mortgagor; since a mortgage to secure future advances or liabilities should describe the nature and amount of them with reasonable certainty.—1 Jones on Mortgages, § 367; *Collier v. Faulk*, 69 Ala. 61; *Marks v. Robinson*, 82 Ala. 84; *Lovelace v. Webb*, 62 Ala. 280; *Sanford v. Wheeler*, 13 Conn. 165; *North v. Belden*, 13 Conn. 376; *Pettibone v. Griswold*, 4 Conn. 159.

[Hendon v. Morris ]

COLEMAN & BANKHEAD, *contra*.—The assumption and payment by a mortgagee of a debt due by the mortgagor to a third person, does not render the mortgage fraudulent.—*Loucheim v. First Nat. Bank*, 98 Ala. 521 ; *Bank v. Donnell*, 89 Ala. 434.

The giving of collateral security for a debt, which fact is not recited in the mortgage, does not invalidate the mortgage.—*Loucheim v. First Nat. Bank*, 98 Ala. 521 ; *Trust Co. v. Foster*, 58 Ala. 502.

When a debtor has property amenable to legal process, sufficient to satisfy all his liabilities, he can not be said to be insolvent, although he may not have money in hand sufficient to meet them as they mature.—*Smith v. Collins*, 94 Ala. 394. Creditors can not complain of a conveyance of his homestead by their debtor, since they are not thereby injured.—*Hodges v. Winston*, 95 Ala. 514.

A mortgage to secure future advances, if not tainted with fraud or bad faith, is just as valid as if made to secure past indebtedness, not only as between the parties, but also as against subsequent purchasers and incumbrancers, so far at least, as respects advances made before the equities of such purchasers or incumbrancers.—*Collier v. Wood*, 85 Ala. 91 ; *Collier v. Faulk*, 69 Ala. 58 ; *Lawson v. Ala. Warehouse Co.*, 80 Ala. 341.

The jurisdiction of a court of chancery to reform or rectify written instruments may be exercised as well against creditors, and purchasers having actual or constructive notice of the mistake, as between the immediate parties.—*Berry v. Sowell*, 72 Ala. 14 ; *Dozier v. Mitchell*, 65 Ala. 511.

BRICKELL, C. J.—A mortgagee, the law day having passed, may resort to a court of equity for a reformation of the mortgage and for foreclosure ; a bill filed for these purposes is not subject to objection for multifariousness. *Alexander v. Rhea*, 50 Ala. 450. Such was the character and purpose of the original bill filed by the appellee, Morris, and of the cross-bill filed by the appellant, and corresponding relief was granted to each by the chancellor.

Manifestly, by mere inadvertence not of infrequent occurrence, the draughtsman of the mortgage to Morris did not designate the section in which a part of the lands was situate. The correction of the error by the inser-

tion of the number of the section, was the reformation prayed by the original bill. It may be, the omission was supplied by the description in the mortgage, taking it altogether, for it would be a remarkable coincidence, if the mortgagor had two similar subdivisions of.land in any other section from which four acres, more or less, in the same corner had been sold by William Guttery to T. J. King. . However this may be, the evidence is plenary, that the lands are situate in section 18, and that of the mortgage and of the lands it was intended to pass, the appellant had notice and knowledge prior to the execu- tion of the mortgage to him, which by the decree is sub- ordinated to the mortgage to Morris.

A subsequent creditor, or mortgagee, or purchaser, hav- ing notice of a prior mortgage, or conveyance, can im- peach the one or the other only for fraud in fact, *mala fides* in the transaction, the burden of proving which rests upon him. The doctrine has been so often an- nounced, and the reasons upon which it rests so often explained, that there can not now be a necessity for a citation of the authorities supporting it. Indeed, it is not now controverted, for the insistence of the appellant is, that the mortgage to Morris was infected with actual fraud, directed against the existing creditors of the mortgagor. The insistence seems to rest primarily on the ground that the mortgagor was insolvent at the time of the execution of the mortgage. But the in- solvency is not proved; the evidence rather disproves it. The aggregate of his debts did not equal five hun- dred dollars, the value of the lands mortgaged, and he had other lands on which his homestead was situate, and personal property, though not in value equalling the constitutional and statutory exemptions. Insol- vency is not imputable, when a debtor has property subject to legal process, sufficient to meet all his lia- bilities.—Wait on Fraudulent Conveyances, § 273.

It is again said, that the debt described in the mort- gage was ficticious; was not a real debt. As described in the mortgage, the debt was a promissory note for the payment of a specific sum of money at a time cer- tain. The consideration of the note was the promise of the payee to satisfy an outstanding mortgage on the lands held by Boshell, and to make advances to the mortgagor during the current year. It is of no conse-

8

quence that the promise of the payee was not in writing, or that it was not express; it was involved in the very nature of the transaction, and constituted a valuable consideration of the note and mortgage.—1 Jones Mort., (4th ed.), § 375; *Lovelace v. Webb*, 62 Ala. 271. Nor is it a circumstance affecting the validity of the transaction, that a crop lien, as it is termed, was taken as additional security for the debt. A creditor may take any number of securities for the payment of a debt, without subjecting himself or the debtor to suspicion, if the debtor be not insolvent; and if he be insolvent, without exciting just suspicion, unless the securities are excessive, indicating not abundant caution, but a purpose to shield the property of the debtor from the reach of other creditors.—*Loucheim v. Bank*, 98 Ala. 521; *Perry Ins. Co. v. Foster*, 58 Ala. 502.

Mortgages are not infrequently taken as a security for future advances, not so expressing the consideration, but, as in the present case, expressing as the consideration, a promissory note, or other evidence of a present debt. Such mortgages are of undoubted validity, and when necessary, parol evidence is received to show the real consideration; the real nature of the transaction.— *Tison v. P. S. & L. Asso.*, 57 Ala. 323; *Forsyth v. Preer*, 62 Ala 443; *Wilkerson v. Tillman*, 66 Ala. 532. It has never been supposed that these are offensive as reciting a fictitious consideration, or intentionally concealing the real nature of the transaction. In *Shirras v. Caig*, 7 Cranch, 50, it was said by Chief Justice Marshall: "It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of 30,000*l*, due to all the mortgagees. It was really intended to secure different sums, due at the time from particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount. It is not to be denied, that a deed, which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his

real equitable rights, unless it be in favor of a person, who has been, in fact, injured and deceived by the misrepresentation.'' The appellant is a subsequent creditor and mortgagee, dealing with the mortgagor with full notice of the prior mortgage after the prior mortgage to Boshell had been satisfied, and advances made, exceeding in the aggregate the amount of the note. The recitals of the mortgage could not have misled him, for if he knew or had notice of the real transaction, he would be bound by and affected with it, as the mortgagor was bound and affected. If he had not notice, he had notice that the mortgage recited as its consideration a present, absolute debt, and this ought to have awakened inquiry, and inquiry would have led to knowledge of the real facts.

Without prolonging this opinion, it is enough to say there is no evidence of actual fraud in the mortgage found in the record. It was supported by a valuable consideration, and the purposes of the parties were free from guile. We concur in the conclusions of the chancellor, and the decree must be affirmed.

Affirmed.