[No. 15226.   Department Two.   October 22, 1919.]

C. H. HAYS, *Appellant,* v. C. C. BASHOR, *Respondent.*[1]

CHATTEL MORTGAGES (1)—ABSOLUTE TRANSFER AS MORTGAGE. A bill of sale to a bank cashier of a donkey engine, purchased for the use of loggers, was not intended as a chattel mortgage to secure the loggers' note for $300 advanced by the bank, where the agreement gave the makers of the note an option to pay it and take title to the engine, or to pay a sum agreed upon as rental for the engine and take back the note; since there was no obligation to pay the note and there could be no security for a debt when there was no debt.

EVIDENCE (147, 149) — PAROL — To VARY WRITING — CONTRACT FOR SALE OF CHATTEL. A written agreement for the absolute transfer of a donkey engine, showing that it was not security for a debt, cannot be varied by parol evidence drawing conclusions from the transaction that it was intended as a chattel mortgage.

SALES (89)—TENDER (10-1)—TRANSFER OF TITLE—EFFECT OF TENDER. Under an agreement to transfer a donkey engine upon payment of an agreed price within a certain time, timely tender does not operate to transfer the title.

REPLEVIN (6) — TENDER (10-1) — TITLE OF PLAINTIFF — EFFECT OF TENDER. Replevin presupposes title in the plaintiff, and does not lie on timely tender of the price of a donkey engine; but the remedy is for breach of contract or specific performance.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered July 9, 1918, upon findings in favor of the plaintiff, in an action in replevin, tried to the court.   Affirmed.

*Imus & Fisk,* for appellant.

*Miller & Wilkinson,* for respondent.

FULLERTON, J.—In this action the appellant sued in replevin to recover from the respondent possession of a donkey engine and certain described equipment connected therewith, praying in the alternative, that, if delivery of the property could not be had, he have

[1]Reported in 185 Pac. 814.

judgment for the value thereof. The cause was tried by the court sitting without a jury, and resulted in a judgment in favor of the appellant for the sum of $50. He appeals, contending that the recovery allowed him is insufficient.

In the main the facts are not in dispute. In the summer of 1913, the appellant and his then partner were engaged in, or were desirous of engaging in, the business of logging, at a designated place in Cowlitz county. The respondent was then cashier and manager of the First National Bank of Kelso. The appellant and his partner desired for use in their business a donkey engine, and found a suitable one which could be purchased from a neighboring logging company at a price of $300 in cash. The appellant and his partner either did not have the money to make the purchase or did not wish to take it out of their business, and applied to the appellant for a loan of the amount required from his bank, offering him certain security. The respondent did not consider the security offered satisfactory and declined to make the loan. Later on the parties entered into an arrangement by which the purchase of the engine for the use of the appellant and his partner was consummated. The appellant and his partner executed their note to the bank named for the sum of $300; the respondent purchased the engine from the logging company, taking a bill of sale therefor running to himself; and thereupon entered into the following agreement with the partners:

"This agreement, made and entered into on this the 25th day of June, 1915, by and between C. C. Bashor, of Kelso, Washington, the party of the first part, and James Burcham and Carl Hayes, of the same place, parties of the second part, witnesseth:

"The said party of the first part has this day purchased of the Cowlitz County Logging Company one 9 x 10 Smith & Watson Donkey Engine, together with

the lines thereon, for the sum of three hundred ($300) dollars, and hereby agrees with the said parties of the second part that they may use said donkey engine in their logging operations on the Swager property on the west side of the Cowlitz river, near Lexington, Washington, they to stand all expenses in moving said donkey engine from its present location.

"The parties of the second part have signed a note in favor of the First National Bank, Kelso, Washington, for three hundred ($300) dollars, due September 25, 1915, with interest thereon at the rate of 10 per cent per annum until paid, and in case said note is paid when due, then and in that case the said party of the first part hereby agrees to give said parties of the second part sufficient bill of sale to said donkey engine and all lines thereon, but in case said note is not paid when due, then in that case said donkey engine is to be immediately turned over to the said party of the first part, together with the sum of $100 as rental thereon and said engine is to be left on the west bank of the Cowlitz river near Lexington, Washington, in good running order and repair, and in case said engine is turned over to the said party of the first part by said parties of the second part as last above provided, and the rental of $100 is paid, then said party of the first part hereby agrees to cancel and return to said second parties the $300 note which they are giving in favor of said bank above mentioned."

After the business had continued for a short time, the appellant's partner sold his interests therein and his interests in the partnership property to the appellant. In the agreement of sale, which was in writing, it was recited that neither of the partners had any interest in the donkey engine mentioned "unless a certain note for $300 in favor of the First National Bank of Kelso, Washington, is paid when due, and a certain agreement made with C. C. Bashor is kept and performed."

The appellant, subsequent to his purchase of his partner's interest, became financially embarrassed and

the respondent advanced money for his use, and finally took over his business, completed his contracts, sold the logs, and applied the proceeds of the sales to the expenses incurred in the conduct of the business and in satisfaction of the appellant's obligations. No part of the proceeds of the sales of the logs were paid upon the note, unless it was a small sum in the way of interest.

On the disputed question of fact, the appellant testified that, at the conclusion of the logging transactions, he went to the bank and there tendered to the respondent the amount due on the note, with interest, and demanded that the respondent execute to him a bill of sale of the donkey engine in accordance with the terms of the agreement above quoted; that the respondent said it was all right, and to come in about a week later, when he would fix it up; that he returned later, when the respondent told him there were other obligations due him which must be settled before the matter was concluded; that he arranged to settle these obligations, and later asked for the bill of sale, when the respondent insisted that he execute a writing of some kind, to which he objected; that the respondent then refused to deal with him further, and later removed the donkey engine to his ranch. The respondent's version of the transaction is that, when the appellant came to see him, the appellant produced a bill of sale for execution by him which included furnishings for the engine not belonging to him, and that he refused to execute it for that reason, telling the appellant to come back again and he would have a new bill of sale prepared; that he does not remember the length of time he asked to prepare the bill of sale, but thought it a much shorter time than the appellant had stated it to be; that he later prepared and executed a bill of sale for the engine, which was not taken up by the appellant; that he then

had possession of the engine; that he later removed it to his farm and finally disposed of it. He also testified that, at the time he took possession of the engine, it had a cable line upon it, in the way of furnishings not on it when it was originally purchased. It was for this extra quantity of cable line the court allowed judgment in favor of the appellant.

It is the contention of the appellant that the transaction relative to the purchase of the donkey engine created, as between the parties, the relation of mortgagor and mortgagee. It is argued in his behalf that a contract to purchase the engine was made by him and his partner; that they borrowed of the bank the money to pay the purchase price; that this money was used by the respondent in the purchase of the engine; that the respondent took the legal title to the engine as security for the payment of the money borrowed; that a tender of payment was made prior to the institution of any proceeding to foreclose upon the security; that this tender operated to release the property from the lien, vesting title absolute in the appellant as the successor in interest of the original purchasers; and from this it is contended that the appellant has the entire interest in the property and can recover its possession in an action of replevin, or in case delivery of the property cannot be had, the value of the property.

It is true, undoubtedly, that a transfer of property, although absolute on its face, will be assumed and held to be a mortgage where it is shown that there is no other consideration for the transfer than a loan or forbearance of money, or where it appears from the entire transaction that security, and not an absolute transfer, was the intention of the parties. But the courts will never assume or hold that an absolute transfer of property creates a trust or is security for a debt where the purpose of the transfer is made clear

by the transactions between the parties, and this purpose is contrary to the idea of trust or security. This, of course, is but saying that the contract made by the parties of itself controls and fixes their rights and liabilities, and that no assumptions or presumptions will be indulged in contrary to the evident purpose and intent of the contract. In the case before us, we think it clear there was no intent or purpose to create a mortgage or to take security of any form for a loan. Contrary to the appellant's assumption, there was, in fact, no loan of money. While a note was given to the bank, there was, as between the bank and the other parties to the agreement, no obligation to pay the note. The makers thereof had the option, at the time the note became due, either to pay it and take title to the donkey engine, or pay the sum agreed upon as rental for the engine and take back the note. The respondent was evidently dealing in two capacities; in one capacity as the representative of the bank, and in the other as an individual. His acts were obligatory upon the bank, and, plainly, neither the bank nor the respondent could enforce the payment of the note. Their sole remedy, in case of failure to pay the note, was to enforce the payment of the agreed rental. It is perhaps needless to add that there can be no security for a debt where there is no debt. The language of Judge Hadley, in *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61, is fitting:

"To have created the relation of mortgagor and mortgagee between the parties, it was essential that there should have been a debt capable of enforcement by action, and which was intended to be secured by the mortgage. There could be no debt when there was no liability therefor."

When to this is added the fact that the transaction itself and the written evidence of the transaction are not in the form usual in cases of mortgage security,

we can see no room for the conclusion the appellant would draw therefrom. We have not overlooked the oral evidence of the appellant to the effect that there was a borrowing of money and a taking of security by instruments in the form of absolute transfers, but these are but conclusions drawn by him from the transactions. His part of the agreement is in writing, and he cannot be permitted to vary or control its effect by parol.

Since the appellant's right to the property depended upon payment of an agreed price, his tender of the price, conceding it to have been timely made and sufficient in other respects, did not vest title to the property in him. In states where mortgages do not operate as a conveyance of title, but are mere liens, it is generally held, and it has been held in this state (*Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. [N. S.] 1164), that a tender of the mortgage debt before foreclosure discharges the property from the encumbrance of the lien. Such a tender, however, does not operate as a discharge of the debt: It may stop the running of interest on the debt, and it may relieve the party from the costs of an action brought to recover the debt, but it has never been held, in so far as we are advised, that it operates as a satisfaction of the debt. For the reason that it does not satisfy the debt, a tender of the purchase price on a contract for the conveyance of property does not operate to take the title from the vendor and vest it in the purchaser. So, in this instance, the tender of the purchase price gave the appellant no such title to the property as to enable him to maintain an action in replevin for its recovery. This is not saying that the appellant was without a remedy. Clearly, he could have maintained an action as for a breach of the contract, and, by a showing of circum-

stances rendering the remedy in damages inadequate, could have maintained a suit for specific performance. But the remedy of replevin, whether at common law or under the code, presupposes title to the property, either general or special, in the person seeking the recovery, and neither a recovery of the property in specie nor a recovery of its value can be had unless the person seeking the recovery has such title.

The judgment is affirmed.

HOLCOMB, C. J., PARKER, MOUNT, and BRIDGES, JJ., concur.