UNITED FILM AD SERVICE, APPELLANT, v. GEORGE T. ROACH, CONSTABLE, ET AL., RESPONDENTS.*

Kansas City Court of Appeals.   June 27, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 592, p. 700, n. 77; Chattel Mortgages, 11CJ, section 58, p. 446, n. 2; section 64, p. 450, n. 47; section 339, p. 624, n. 35; p. 625, n. 45; Contracts, 13CJ, section 150, p. 315, n. 90; Fraudulent Conveyances, 27CJ, section 205, p. 526, n. 32; section 227, p. 534, n. 44; Patents, 30Cyc, p. 964, n. 54.

*Leon Greenebaum* for appellant.

*Holmes Hamilton* for respondent Hart.

BLAND, J.—This is a suit in equity in which the plaintiff, a judgment creditor of the Ruth Molly-ets Company, seeks to have a certain fund in the hands of defendant Roach, constable, through his deputy, Rice, applied to the payment of plaintiff's judgment after a judgment of one Hatfield is paid out of the fund. Plaintiff prayed for an order from the court upon the constable requiring him to levy under plaintiff's judgment upon the balance of the proceeds in the deputy's hands realized from the sale of certain personal property of the judgment debtor under an execution upon the Hatfield judgment; that the mortgage held by the defendant Hart upon the property sold by the deputy constable be declared void and that the deputy be restrained from paying Hart any of the proceeds of the sale. The court rendered judgment dissolving the restraining order and against plaintiff on the merits. Plaintiff has appealed.

The facts show that on March 1, 1923, at Kansas City, Missouri, The Stricker Trust, a common-law trust, by its trustees for value executed its note to one J. J. Henson in the sum of $1617 "to be paid

as stated on the reverse hereof." The note contained the following stipulation on the back thereof:

"This note is to be paid by royalties earned by the use of Stricker Automatic Food Molding and Wrapping Machines per contract between the Trustees of the Stricker Trust Estate and J. J. Henson and Ruth Henson, his wife, of date March 1, 1923, for Greater Kansas City. For further particulars see the mortgage securing this note."

This note was secured by a chattel mortgage upon two "Stricker Automatic Food Molding and Wrapping Machines . . . now being in the possession of said J. J. Henson at his storeroom" in Kansas City. The mortgage also described the note and provided that the same was to be paid out of the royalties "earned by the use of the Stricker Automatic Food Molding and Wrapping Machines, per contract between the trustees of Stricker Trust Estate and J. J. Henson and Ruth Henson, his wife, of date March 1, 1923, for Greater Kansas City." Said contract is not shown anywhere in the record but according to the testimony it was an agreement whereby J. J. Henson and his wife contracted to pay for the use of the two machines a royalty of $60 per month during the life of the patent owned by the Stricker Trust and that after payment of the note in question had been made the trust was to receive the royalties thereafter to accrue.

At the time the contract was entered into the Ruth Molly-ets Company was conducted by J. J. Henson and his wife but on or about May 26, 1923, the business was incorporated by them under the name of the "Ruth Molly-ets Co." Henson and wife and afterwards the Ruth Molly-ets Company were engaged in the manufacture and sale of a food product known as Molly-ets, which product was made by the Stricker machines. The corporation assumed the payment of the royalties in question. The record is not clear as to how the royalties were paid after the execution of the note, whether to the Stricker Trust and then to Henson or directly to Henson, but the petition alleges that the Ruth Molly-ets Company paid the note according to its terms out of the royalties. The note was reduced by payments made upon it to Henson and on December 6, 1923, he sold and assigned the note to the amount of $660 to the defendant Hart, the monthly payments thereon to begin on January 1, 1924. Hart was paid the sum of $420 upon the note and according to the petition this and all other sums paid upon the note were paid by the Ruth Molly-ets Company. The last payment made upon the note was on June 3, 1924, and at the time this controversy arose there was owing Hart upon the note the sum of $240.

However, at the time Henson offered to sell the note to Hart, the latter was not satisfied with the security and demanded additional security and a chattel mortgage was given on December 6, 1923, by the Ruth Molly-ets Company through Henson, its president, upon its store fixtures, automobile truck, etc., which were later sold by the constable under the Hatfield judgment. It was recited in the mortgage that it was given to secure the payment of "eleven payments of $60 each, beginning January 1, 1924" on the note in question. The mortgage also recited that if Henson "shall well and duly pay unto ———— the sum of —— Dollars which — owe — as evidenced by —— certain promissory note of even date herewith" the mortgage should be void and should there be a foreclosure "the overplus, if any there be, paid to the Ruth Molly-ets Company." This mortgage was duly recorded on December 6, 1923.

On September 3, 1924, the defendant Hatfield brought suit in the justice court of J. H. Pollock against the Ruth Molly-ets Company and the personal property described in said mortgage executed by that company was attached by the constable, the defendant Roach, through his deputy, the defendant Rice. Judgment was rendered for Hatfield against the Ruth Molly-ets Company on October 10, 1924, in the sum of $150 and costs. Execution on this judgment was issued on October 31, 1924. On September 11, 1924, plaintiff herein filed a suit against the Ruth Molly-ets Company asking judgment for $500 for the breach of contract dated May 29, 1923, wherein the Ruth Molly-ets Company agreed to pay plaintiff the sum of $16 per week for a period of two years for displaying an ad film in certain theaters in Kansas City. This suit was brought by attachment and the property described in Hart's mortgage was attached. Judgment by default was rendered for plaintiff in the last-mentioned suit on October 30, 1924, in the sum sued for. On November 5, 1924, prior to the sale by the constable under the Hatfield judgment, Hart filed in the justice court his affidavit claiming the property levied upon to the extent of $240, basing his claim on the chattel mortgage executed by the Ruth Molly-ets Company. On November 7, 1924, Hatfield, in pursuance of an agreement with Hart, filed before the justice an order directing the constable to pay the sum of $240 to Hart out of the proceeds of the sale. The balance after the deduction of the costs to be paid to defendant Hatfield. Rice testified that he would have "recognized" this agreement between Hatfield and Hart had it not been for the restraining order served on him in this suit. A few moments before the sale, held on November 10, 1924, plaintiff served defendant Rice with a notice that the purported mortgage was void and that plaintiff claimed a first lien on the property and that the constable would proceed with the sale in the Hatfield suit at his peril. On the date last mentioned the property was offered for sale,

subject to the mortgage of Hart, by the deputy constable under the Hatfield judgment. Hart, Hatfield's attorney and Rice were present at the sale. No offer to buy the property subject to the Hart mortgage could be obtained and after a conversation between Hatfield's attorney and Hart, the latter agreed that the property might be sold by the deputy constable free and clear of the mortgage. Rice was so advised and proceeded with the sale of the property free and clear of all encumbrances. The sale brought $337.70, which fund still remains in the hands of the constable. $269.53 of this sum was realized from the sale of property upon which Hart held his mortgage.

Plaintiff contends that the court erred in rendering judgment against it for the reason that the mortgage from the Ruth Molly-ets Company to Hart is void by reason of the fact that that company was not indebted to Hart when the mortgage was executed and was not a party to the note which the mortgage was given to secure to the extent of Hart's interest therein; that there is nothing in the record to show any assumption on the part of that company of payment of the note; that although the mortgage may have been valid as between the parties, as against third parties it is void.

There is no doubt but that where there is no relationship of debtor and creditor, a chattel mortgage is ordinarily held fraudulent and void as to third persons although as between parties it may be valid. [11 C. J. 446, 447.] However, we are convinced that there was an indebtedness existing between the Ruth Molly-ets Company and Hart upon the assignment of the note to the latter. The evidence shows that the note was to be paid from the royalties accruing out of a contract between the Stricker Trust and J. J. Henson and Ruth Henson, which contract was afterwards assumed by the Ruth Molly-ets Company, a corporation; that while, under the terms of the contract, the royalties were to be paid to the Stricker Trust they were not paid to the latter but to Henson, because the petition alleges that they were paid on the note which the evidence shows was held by Henson to December 6, 1923, and these royalties continued to be paid to Hart after the transfer of the note to him. The witness, Livingston, one of the trustees of the Stricker Trust, testified that the trust had ceased to operate "a long time ago." The case was tried upon the 23rd day of September, 1925. Whether the trust went out of existence at the time the note was given to Henson was not shown but we think that the facts establish that there was at least an equitable assignment of the royalties to Henson at the time of the execution of the note and the mortgage to him because an inference is to be drawn from the circumstances strongly indicating the appropriation of these royalties to the payment of the indebtedness evidenced by the note and if there was such an appropriation, there was an equitable assignment *pro tanto* of the royalties to Henson. [Ketch-

344

um v. St. Louis, 101 U. S. 306; In re Macauley, 158 Fed. 322.] If there was such an assignment, the Ruth Molly-ets Company was indebted to Henson at the time he assigned the note *pro tanto* to Hart and to Hart after the assignment. While this indebtedness was not directly upon the note but was merely upon the contract to pay royalties, the payment of the note and the royalties amounted practically to the same thing, and we do not think that these circumstances would prevent the mortgage being good. The assignment of the royalties is contained in the note itself. The form that the note took was substantially a contract providing for the payment to Henson of the royalties and the mortgage to Hart was, in effect, to secure the obligations of this contract which was to pay $60 per month as royalty to the holder of the contract. In fact, without any objection on the part of plaintiff, Hart testified—

"Q. To secure payment of those royalties after you took charge of the note and got the note, this mortgage on the company's property was given? A. Yes, sir.

"Q. That was in consideration of the mortgage? A. Yes, sir."

It is not contended by plaintiff that the Ruth Molly-ets Company was not privileged to give Hart additional security for his indebtedness but on this question see Hendon v. Morris, 110 Ala. 106, 114; Loucheim & Co. v. First National Bank, 98 Ala. 521; Grand Island Banking Co. v. Costello, 45 Nebr. 119, 140, 141. There is no claim made by plaintiff that the Ruth Molly-ets Company was insolvent at the time it made this mortgage and there is no evidence of such insolvency nor is there any evidence that the mortgage was not given in the utmost good faith.

We think there is no reason why the mortgage should not be held to be good for another reason. It was not given as a purely voluntary conveyance without consideration but there was a consideration moving from Hart for he refused to purchase the note until the additional security was given. He parted with his money to Henson upon the faith of the mortgage he took from the Ruth Molly-ets Company. "A benefit to the promisor is not necessary to supply a consideration for the promise since a detriment to the promisee is equally as efficacious . . . a benefit to a third person secured by a contractual promise is a sufficient consideration therefor . . . and it may be added, in law, is as much a consideration to the promisor, as a direct benefit to him." [Fuller v. Dry Goods Co., 189 Mo. App. 514, 527, 528; Green v. Higham, 161 Mo. 335; Strode v. Transit Co., 197 Mo. 616.] This phase of the transaction distinguishes it from the cases cited by plaintiff, to-wit, Martin v. Sexton, 112 Ill. App. 199; Hays v. Bashor, 185 Pac. 814; First National Bank v. Ragsdale, 158 Mo. 668. In view of the fact that there was a consideration given for this mortgage, we think that it was valid. [See Herald & Globe Ass'n v, Clere

Clothing Co. et al., 86 Vt. 141; Wellington v. Terry, 38 Colo. 285, 287.]

However, it is insisted by plaintiff that the mortgage was void because "executed by Henson, as president of the Ruth Molly-ets Company, on corporate assets to secure his own individual debts and in order that he individually might derive a benefit from a transaction out of which the corporation itself derived nothing." In support of this contention, plaintiff cites cases holding that an agent cannot act for his principal and himself in a transaction wherein their interests are antagonistic. We cannot notice this point. The petition is not based upon any such theory. The only attack made upon the chattel mortgage in the petition is as follows:

"Plaintiff further states that the so-called chattel mortgage held by defendant J. H. Hart is of no force and effect whatsoever and is invalid for the reason that said mortgage was issued by a corporation, to-wit: The Ruth Molly-ets Company, upon its own assets, to secure the note of J. J. Henson personally and that said corporation had no power or right to mortgage its assets as security for the note of any individual whatsoever; that said mortgage was, therefore, *ultra vires* and of no force and effect whatsoever; that said mortgage was not authorized by said corporation according to its by-laws; that said chattel mortgage was given by said corporation, The Ruth Molly-ets Company, for no consideration, and was and still is absolutely void and of no force and effect as to the plaintiff herein, a then creditor of said corporation."

It is last insisted that in consenting to the sale of the property free and clear of his chattel mortgage, Hart waived whatever right he may have had to the property or to the proceeds derived from the sale thereof. It is no doubt true that it is the general rule that where mortgaged property is sold by the mortgagor with the consent of the mortgagee, the lien of the mortgage is waived. This is upon the theory that when a chattel mortgage is given the title to the property remains in the mortgagor, that he sells it as though they were no mortgage on it after the mortgagee has released his lien and the lien does not follow the purchase price and the only recourse the mortgagee has is against the mortgagor on his promise to pay over the proceeds, upon which there is no lien. [Stockyards Nat'l Bank v. B. Harris Wool Co., 289 S. W. 623; Maier v. Freeman, 112 Calif. 8; White Mt. Bank v. West et al., 46 Me. 15; Smith v. Bank, 99 Iowa 282; Oklahoma Cattle Loan Co. v. Bright and Mason, 219 Mo. App. 157, 160.] But in these cases and others cited by plaintiff consent to the sale was given by the mortgagee to the mortgagor before the sale and the property was sold by the latter while in the case at bar the mortgagor had nothing to do with the sale. Under the agreement had by Hart with the deputy constable the latter was to sell the

property free of Hart's lien and to turn over sufficient of the proceeds to discharge Hart's debt, to-wit, $240. Consequently as soon as the proceeds of the sale reached the hands of the deputy constable, who was Hart's agent and therefore a trustee for Hart, and not the agent of the Ruth Molly-ets Company, they became subject to the trust and it was the constable's duty to turn them over to Hart, and Hart's claim is superior to that of the judgment creditors of the Ruth Molly-ets Company. [Hoyt v. Clemens, 167 Iowa, 330.] The case of Maier v. Freeman, supra, principally relied upon by plaintiff was distinguished in the case of McIntire v. House, 131 Calif. 11, 14.

It is apparent from what we have said that there is no equity in plaintiff's bill and, regardless of the question as to whether plaintiff had any remedy except through a court of equity, a point not raised by the parties, the judgment of the chancellor was correct and it is therefore affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.